Gregory E. DELAHUNTY, Plaintiff, on behalf of himself and minor child Susan Roe,

v.

STATE OF HAWAII; Department of the Attorney General of the State of Hawaii; Warren Price, Attorney General; Department of Social Services, Division of Child Protective Services; Kathryn Albu; Kenneth Enright; Christine Miwa; Luanne Murakami; Karen Anderson–Kemp; Noreen Delahunty; John Doe and Jane Roes, 1 through 40; State and/or City Entity "A" Through "H", Defendants.

Civ. No. 87–0881 HMF.

United States District Court, D. Hawaii.

Dec. 30, 1987.

Anthony P. Locricchio, Kailua, Hawaii, for plaintiff.

Warren Price, III, Atty. Gen., Steven Michaels, Carl Debo, Honolulu, Hawaii, for defendants.

## AMENDED ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION; ORDER OF DISMISSAL

FONG, Chief Judge.

Plaintiff's motion for a preliminary injunction came on for hearing before this court on December 14, 1987. Anthony Locricchio of Kailua, Hawaii appeared on behalf of plaintiff. Stephen Michaels and Carl Debo of the Department of the Attorney General appeared on behalf of the State of Hawaii, Department of the Attorney General of the State of Hawaii, Warren Price, III, Attorney General, Department of Social Services Division of Child Protective Services, Kathryn Albu, Kenneth Enright, Christine Miwa, and Luanne Murakami (the Hawaii defendants).

The parties to this case have alleged facts which indicate an unfortunate series of events incident to a divorce. On June 26, 1987 a South Carolina family court awarded plaintiff Gunnery Sergeant Gregory E. Delahunty (Delahunty) custody of two minor children, presently aged ten and seven. The ten-year-old, referred to here as "Susan Roe", is the focal point of this action. The South Carolina court awarded custody to Delahunty in a decree of divorce between Delahunty and his first wife defendant Noreen Delahunty (Noreen). Susan Roe was Noreen's natural daughter by a prior relationship.

The divorce decree allowed the children to spend thirty days each summer with their mother, who presently lives in St. Louis. While visiting with her mother during the summer of 1987, Susan Roe told authorities that Delahunty had sexually abused her on a regular basis, beginning shortly after Noreen and Delahunty separated in April 1986. She repeated her allegations in several interviews. The Hawaii defendants have provided the court with one of these videotaped interviews, which took place at a St. Louis hospital. Medical tests tend to support the girl's story but are inconclusive.

At the end of their visitation period Noreen refused to return the two children to Delahunty, who had by this time married Jillinda Wachter Delahunty. However, Delahunty remained legal custodian of the children and the children were flown back to Hawaii, through Delahunty's brother, on or about October 26, 1987. In response, Noreen contacted the St. Louis police, who informed the defendant Division of Child Protective Services (CPS) about the girl's allegations of sexual abuse.

Once in Hawaii Susan Roe apparently retracted her allegations. Even so, a CPS social worker—defendant Christine Miwa (Miwa)—conducted a preliminary investigation pursuant to Hawaii's Child Protection

Act, *Haw.Rev.Stat.* Ch. 587 (1985). Plaintiff claims that Miwa continually exceeded her authority during this investigation. The Hawaii defendants in turn allege that plaintiff's counsel repeatedly acted to impede the investigation's progress.

On November 3, 1987 the state filed a verified petition for an ex parte court order granting the state temporary foster custody of the child. The petition was based on Susan Roe's allegations in the St. Louis videotape, as well as upon the medical evidence tending to support those allegations. State Family Court Judge Marjorie Higa Manuia granted the petition pursuant to *Haw.Rev.Stat.* § 587–32(d). Plaintiff alleges that the petition contains intentionally false and misleading statements made in order to convince the family court that Susan Roe was in imminent danger.

The child was placed in a foster home and the court appointed a guardian ad litem pursuant to *Haw.Rev.Stat.* § 587–33(c). Although the child has apparently been allowed to visit with plaintiff, he alleges that since taking custody the state has held the child "incommunicado" without permitting her to see medical doctors or a child psychologist chosen by Delahunty. This psychologist had examined Susan Roe on one occasion and, after viewing a videotape of the child made on November 10, 1987, opined that she appeared depressed and at times near panic. He concluded that unless the trend was reversed, there was a chance she could become suicidal.

On November 5, 1987 hearings commenced before Family Court Judge Darryl Y.C. Choy to determine whether, under *Haw.Rev.Stat.* § 587–53, "continued placement in emergency foster care is necessary to protect the child from imminent harm." Plaintiff's complaint and motion also attack the state family court proceeding. They allege various improprieties on the part of court personnel and on the part of Judge Choy. They also allege that the child's guardian ad litem was selected by the family court in an improper manner and is biased against plaintiff and his counsel. Finally, they protest the fact that the family court has indicated that it will apply a portion of *Haw.Rev.Stat.* Ch. 587 that plaintiff contends violates his rights under the Fifth, Sixth and Fourteenth Amendments to the Constitution.

Plaintiff alleges that the actions outlined above amount to a deprivation of his constitutional rights in violation of 42 U.S.C. § 1983. His complaint seeks the following injunctive relief:

(1) stay the family court proceeding;

(2) compel the immediate physical examination of Susan Roe, who was allegedly injured in an automobile accident while in state custody;

(3) transfer Susan Roe to the care and custody of Jillinda Delahunty under the terms of a plan prescribed by plaintiff's child psychologist;

(4) order the child's new guardian to take her to plaintiff's child psychologist for examination and preparation of a report to the court;

(5) order the guardian to meet with the child psychologist and other doctors who have been treating Susan Roe to make recommendations in her best interest;

(6) permit the child to testify at any hearing as to the truth of her statements of sexual abuse;

(7) appoint a master available to all Hawaii residents for the purpose of advising the court whether an order superintending control should issue allowing the court to review all termination of parental rights proceedings currently in Hawaii family courts.

Plaintiff sought a temporary restraining order, which the court denied by written order filed December 4, 1987 on the basis that Delahunty had failed to satisfy the requirements of Fed.R.Civ.P. 65(b). On December 10, 1987, after this court denied the application for a temporary restraining order, plaintiff petitioned the Supreme Court of Hawaii for a Writ of Mandamus in *Delahunty v. Vitousek, et al.,* No. 12559, seeking among other things the remedies sought in these proceedings.

Plaintiff has now returned to this court seeking a preliminary injunction and has orally represented that the relief he seeks is confined to enjoining application of *Haw.*

*Rev.Stat.* Ch. 587 to plaintiff's presently pending temporary custody proceeding.

## HAWAII DEFENDANTS' RESPONSE

The Hawaii defendants argue that the court must deny preliminary injunctive relief for a number of reasons. First, the Hawaii defendants are entitled to Eleventh Amendment immunity from suit. Second, Delahunty lacks standing to sue on behalf of Susan Roe, for whom the family court has appointed a guardian ad litem. Third, since plaintiff's claims attack various judgments of a state court, this federal court is without power to review those judgments. Fourth, even if this court does have jurisdiction, it should decline to exercise it pursuant to various abstention doctrines. Fifth, plaintiff's constitutional claims are meritless in view of the state's substantial power to prescribe procedures for adjudicating family law matters. Sixth, plaintiff has not satisfied the standard by which the court determines whether preliminary injunctive relief is appropriate. Hawaii defendants argue that the evidence clearly shows that the child is safe, receiving proper treatment, and is being permitted to visit with her family, including Delahunty. Rather than showing that preliminary relief would redress hardship and wrongdoing, the Hawaii defendants argue that the evidence clearly indicates that injunctive relief would not be in the best interests of the child.

## JURISDICTION

As an initial matter, the Hawaii defendants argue that the court lacks jurisdiction over the subject matter of this controversy and that it should therefore dismiss the complaint and motion pursuant to Fed.R. Civ.P. 12(h)(3). It is true that federal courts are courts of limited jurisdiction, and that they have only the power that is authorized by Article III of the Constitution. *Bender v. Williamsport Area School District,* 475 U.S. 534, 106 S.Ct. 1326, 1331, 89 L.Ed.2d 501 (1986). *See, e.g., Marbury v. Madison,* 1 Cranch (5 U.S.) 137, 173–180, 2 L.Ed. 60 (1803). Therefore, if it appears to this court that it does in fact lack subject matter jurisdiction, it must dismiss this action.

The Hawaii defendants argue that every one of the issues raised in this complaint has been considered and ruled upon in the state court action. Plaintiff is therefore jurisdictionally barred from taking what is, in effect, a collateral appeal of these rulings to federal court. They point to 28 U.S.C. § 1257, which provides that appeals from final judgments of state supreme courts shall be made before the United States Supreme Court. They also argue for application of the *Feldman* doctrine, which holds that federal district courts do not have jurisdiction over challenges to final state court judgments. *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 486, 103 S.Ct. 1303, 1316–17, 75 L.Ed.2d 206 (1983).

■ Assuming that plaintiff did in fact raise in family court all the issues he seeks to bring before this court, federal jurisdiction is not barred by 28 U.S.C. § 1257 or the *Feldman* doctrine. Both of those jurisdictional limitations do not apply where, as here, there has been no final judgment in the state court. Section 1257 requires a "final judgment or decree" of the state supreme court and the *Feldman* doctrine, as enunciated by the Supreme Court and interpreted by the Court of Appeals for the Ninth Circuit, requires that there be at least an appealable decision of a state trial court. *See MacKay v. Pfeil,* 827 F.2d 540, 545 (9th Cir.1987); *Worldwide Church of God v. McNair,* 805 F.2d 888, 891 (9th Cir.1986). As the Court of Appeals held in *McNair:*

> Although the federal district court may not exercise appellate jurisdiction over the judgment of a state court, a district court does have jurisdiction over a "general" constitutional challenge that does not require review of a final state court decision in a particular case.

*Id.* Therefore, § 1257 and *Feldman* do not deprive the court of jurisdiction over this action, where plaintiff does not seek review of a final state court decision.

■ Where plaintiff challenges *ongoing* state court proceedings, as he does in this

case, the Anti–Injunction Act, 28 U.S.C. § 2283, ordinarily would prevent this court from assuming jurisdiction. However, plaintiff's lawsuit alleges a violation of the Civil Rights Act, 42 U.S.C. § 1983, to which the Anti–Injunction Act does not apply. *Mitchum v. Foster,* 407 U.S. 225, 242–243, 92 S.Ct. 2151, 2162, 32 L.Ed.2d 705 (1972). Therefore, the court does have jurisdiction to consider this case.

## WHEN THIS COURT MAY ISSUE A PRELIMINARY INJUNCTION

The Hawaii defendants raise a number of arguments in support of the proposition that the court should decline to exercise its jurisdiction over this action. Although the court would ordinarily address these arguments *before* reaching the merits of plaintiff's motion, in light of the importance of the issues presented the court will defer its consideration of defendants' abstention arguments and will briefly address the merits of plaintiff's motion for preliminary injunctive relief.

The basic function of a preliminary injunction is to preserve the status quo ante litem pending a determination of the action on the merits. *Los Angeles Memorial Coliseum Com'n v. National Football League,* 634 F.2d 1197, 1200 (9th Cir.1980). On a motion for a preliminary injunction plaintiff bears the burden of fulfilling one of two standards, which the Court of Appeals for the Ninth Circuit describes as "traditional" and "alternative." *Cassim v. Bowen,* 824 F.2d 791, 795 (9th Cir.1987); *American Motorcyclist Association v. Watt,* 714 F.2d 962, 965 (9th Cir.1983).

Under the traditional standard, a court may issue preliminary relief if it finds that (1) the moving party will suffer irreparable injury if the relief is denied; (2) the moving party will probably prevail on the merits; (3) the balance of potential harm favors the moving party; and (4) the public interest favors granting relief. *Cassim,* 824 F.2d at 795.

Under the alternative standard, the moving party may meet its burden by demonstrating either (1) a combination of probable success on the merits and irreparable injury if denied the preliminary injunction or (2) that he has raised serious questions and the balance of hardships tips sharply in his favor. *Id.; Jacobsen v. U.S. Postal Service,* 812 F.2d 1151, 1152 (9th Cir.1987); *Los Angeles Memorial Coliseum,* 634 F.2d at 1201. Mere allegations, whether contained in plaintiff's complaint or submitted by him in affidavit form, are insufficient to satisfy his burden of *demonstrating* a prerequisite to preliminary injunctive relief. *Id.*

Plaintiff seeks an order of this court enjoining application of *Haw.Rev.Stat.* Ch. 587 to the pending state temporary custody proceeding. Under both the traditional standard and the first prong of the alternative standard, Delahunty must demonstrate that he is likely to succeed on the merits of his case. In order to succeed on the merits, plaintiff must prove that the statute violates his Fifth, Sixth or Fourteenth Amendment rights because it provides for a less rigorous standard of proof in temporary custody proceedings than is constitutionally required. Specifically, the statute provides that family courts apply a preponderance of the evidence standard to determine whether temporary foster custody should remain with the state after the first two days. *Haw.Rev.Stat.* § 587–41(a). Plaintiff argues that the Supreme Court decision in *Santosky v. Kramer,* 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982), requires that the state prove by clear and convincing evidence that temporary custody should be awarded to a particular agency or individual. This is the standard that the state currently applies to its permanent custody proceedings. *Haw.Rev.Stat.* § 571–63.

*Santosky* dealt specifically with the rights of natural parents in permanent custody proceedings. In that case, the Supreme Court held that natural parents— even those facing charges of abusive treatment—have a fundamental liberty interest in the care, custody and management of their children. Thus, when the state "moves to destroy weakened familial bonds, it must provide the parents with fundamentally fair procedures." *Santo-*

*sky,* 455 U.S. at 753–54, 102 S.Ct. at 1394–95, 71 L.Ed.2d 599. The Court held that this requirement means that the state must prove its case by "clear and convincing" evidence before it may terminate parental rights. 455 U.S. at 765–66, 102 S.Ct. at 1401–02. Clear and convincing evidence is a higher standard of proof than a mere preponderance of the evidence standard, reflecting the fact that "the consequence of an erroneous termination is the unnecessary destruction" of a natural family. *Id.*

The court does not need to address the question of whether *Santosky*'s holding applies to custodial, as well as natural parents because the state court proceeding concerns only the issue of *temporary* custody. *See Santosky,* 455 U.S. at 754 n. 7, 102 S.Ct. at 1395 n. 7. An adverse decision will not result in the termination of Delahunty's rights as a parent. The most that the family court can do is continue the state's temporary custody of the child. Obviously, the "consequence of an erroneous decision" is far less severe in temporary custody proceedings than in permanent ones.

To evaluate whether the severity of an erroneous determination in temporary custody cases warrants a higher standard of proof, a court considering the merits of plaintiff's argument would turn to Supreme Court cases such as *Addington v. Texas,* 441 U.S. 418, 99 S.Ct. 1804, 60 L.Ed. 2d 323 (1979), for guidance. In that case, the Court declared:

> The function of a standard of proof, as that concept is embodied in the Due Process Clause and in the realm of factfinding, is to "instruct the factfinder concerning the degree of confidence our society thinks he should have in the correctness of factual conclusions for a particular type of adjudication."

441 U.S. at 423, 99 S.Ct. at 1808 (*quoting In re Winship,* 397 U.S. 358, 370, 90 S.Ct. 1068, 1075, 25 L.Ed.2d 368 (1970)). That degree of confidence turns on "both the nature of the private interest threatened and the permanency of the threatened loss." *Santosky,* 455 U.S. at 758, 102 S.Ct. at 1397.

■ Under this analysis, a court evaluating the merits of plaintiff's constitutional argument would be unlikely to find that application of a preponderance standard to temporary custody proceedings is fundamentally unfair, amounting to a violation of Delahunty's constitutional rights. While there is no question that the private interest involved in *any* custody proceeding is a vital one, in temporary custody proceedings such as plaintiff's the threatened loss is temporary, not permanent. Of course, even temporary loss of custody works a hardship on parents; the court does not intend to minimize the magnitude of that loss, nor does it hold that, because the proceeding involves temporary rather than permanent custody, the state is not bound to provide due process. Instead, the question involves a determination of what process is due in a temporary proceeding. *See Mathews v. Eldridge,* 424 U.S. 319, 344, 96 S.Ct. 893, 907, 47 L.Ed.2d 18 (1976). *Santosky* indicates that plaintiff is unlikely to show that due process in a temporary proceeding includes a requirement of proof by clear and convincing evidence. Therefore, he is unlikely to succeed on the merits of his case and the court may not grant his motion for a preliminary injunction under either the traditional standard or the first prong of the alternative standard.

■ Plaintiff may still be entitled to relief, however, if he can satisfy the second prong of the alternative standard. To do so Delahunty must show that he has raised serious questions and that the balance of hardships tips sharply in his favor. Leaving aside the question of whether plaintiff has raised serious questions, the court is unable to conclude—based upon the evidence before it—that the balance of hardships tips sharply in plaintiff's favor.

Delahunty has alleged a number of hardships. These include the anguish of separation from the child, the cost (in attorney's fees alone) of the temporary custody proceedings, knowledge that the child may be depressed and potentially suicidal, fear that the family court may award temporary custody to her natural mother, whom he believes to be unfit, and belief that state

personnel are in some way biased against plaintiff and his counsel.

It is plaintiff's burden to demonstrate that these hardships are real and that they sharply offset any burdens on the defendants. This he has not done. The pain of separation, however real, is not enough to enjoin enforcement of a statute empowering the state to take temporary custody from a parent charged with serious and supportable charges of sexual abuse. The state's power to temporarily deprive a parent of custody without the parent's consent under such circumstances is well established. *See, e.g., Robison v. Via*, 821 F.2d 913, 921 (2d Cir.1987).

Furthermore, plaintiff's counsel's claim that he has charged Delahunty some $38,-000 in attorney's fees over the course of the temporary custody proceedings does not rise to the level of a demonstration of hardship. For one thing, the claim remains unsubstantiated. Counsel has presented no affidavit or other evidence showing that the fees have been incurred and charged. Although the amount of paper filed with the court does indicate that counsel has spent a great deal of time representing Delahunty in the state proceeding, the court also notes that large portions of these submissions are directly or indirectly related to counsel's *prior* involvement with the state family court.

Plaintiff's other allegations of hardship remain unsubstantiated. Although there is convincing evidence that the child was depressed during the period immediately after the state assumed custody, the unrebutted evidence since December 4, 1987, the date that this court denied plaintiff's application for a temporary restraining order, indicates that she is adjusting well and wishes to be with her natural mother in St. Louis. For example, there is evidence that, after a supervised visit with Delahunty during which the child was shown a newspaper clipping that described her as potentially suicidal, she expressed anger that anyone would say such things about her. Furthermore, both her guardian ad litem and the social worker in charge of her case allege that the child is adjusting well, that she is receiving medical and psychological treatment and that she has frequently expressed a desire to be with her natural mother. They further believe that an order of this court returning the child to the Delahunty household—even without Sergeant Delahunty present—would result in pressure on the child to retract her allegations of sexual abuse and would not be in the girl's interests or in the interests of the family court, whose task it is to determine the truth of the allegations.

This evidence of the child's present state of mind is entitled to a great deal of weight. Although access to Susan Roe is restricted, the evidence shows that plaintiff has had a number of opportunities to visit with her, to evaluate her progress for himself and to inform the court if he felt that her November depression had continued. He has not done so. The court must therefore conclude that plaintiff has not carried his burden of demonstrating that the balance of hardships tips decidedly in his favor. Plaintiffs are not entitled to a preliminary injunction. Accordingly the motion for preliminary injunction must be and the same is DENIED.

## EXERCISE OF JURISDICTION

Finally, the Hawaii defendants argue that even if the court were inclined to grant the motion for a preliminary injunction, it is prohibited from doing so by a number of legal doctrines which prevent the court from exercising its jurisdiction over this case.

They first argue that this court is obliged under the Full Faith and Credit Statute, 28 U.S.C. § 1738, to give "the records and judicial proceedings" of state courts "the same full faith and credit in every court within the United States ... as they have by law or usage in the courts of such State ... from which they are taken." In effect, the Hawaii defendants argue, this court must give the decisions of Judge Choy the same preclusive effect in this action as another Hawaii court would give them on collateral attack. *Parsons Steel, Inc. v. First Alabama Bank*, 474 U.S. 518, 106 S.Ct. 768, 771–772, 88 L.Ed.2d 877 (1986).

The court must do so even though plaintiff's federal cause of action alleges a violation of 42 U.S.C. § 1983. *Migra v. Warren City School District*, 465 U.S. 75, 81, 104 S.Ct. 892, 896, 79 L.Ed.2d 56 (1984); *Allen v. McCurry*, 449 U.S. 90, 97–99, 101 S.Ct. 411, 416–417, 66 L.Ed.2d 308 (1980); *Punton v. City of Seattle*, 805 F.2d 1378, 1380 (9th Cir.1986).

Hawaii law requires adherence to prior interlocutory orders of another court, unless "cogent reasons" support the second court's decision to decide the issues differently. *Wong v. City and County of Honolulu*, 66 Haw. 389, 396, 665 P.2d 157, 162 (1983). The Hawaii defendants therefore argue that, since the issues plaintiff seeks to raise in this federal suit have all been adjudicated in the state proceeding, and since this court is bound by those determinations, it cannot issue the sort of injunctive relief plaintiff demands and should therefore dismiss the complaint.

■ The court does not find the Full Faith and Credit Statute to be grounds for dismissing the complaint. It may well be that plaintiff cannot provide "cogent reasons" for justifying departure from Judge Choy's various rulings in the state case. If so, plaintiff would be collaterally estopped from attacking those rulings. However, this argument merely indicates that Delahunty may have little chance of success on the merits of his case. It is not an argument against the court's power to exercise its jurisdiction.

The Hawaii defendants also argue that the court should decline to exercise its jurisdiction pursuant to the doctrine of abstention articulated in *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). In general, where a state civil proceeding is pending, "if the State's interests in the proceeding are so important that exercise of the federal judicial power would disregard the comity between the States and the National Government," the federal court must abstain. *Pennzoil Co. v. Texaco, Inc.*, —— U.S. ——, 107 S.Ct. 1519, 1526, 95 L.Ed.2d 1 (1987).

In his argument, plaintiff's counsel has made much of the court's concern that it may be compelled to abstain from exercising jurisdiction over this case pursuant to the *Younger* doctrine. He has gone so far as to argue that its application here would be "the most threatening and frightening ruling against individual constitutional rights versus power of the state to come along in decades." Plaintiff's Supplemental Memorandum, at p. 12. Plaintiff correctly argues that the *Pennzoil* case, cited in that part of the court's December 4, 1987 order which invited plaintiff to address the abstention issue, was not a § 1983 action and involved plaintiffs who had failed to raise constitutional issues in state court. Apparently confusing abstention with exhaustion, plaintiff's counsel argues that 42 U.S.C. § 1983 does not require plaintiff to exhaust his state remedies, but permits him to proceed directly to federal court for redress.

■ Plaintiff's arguments do not persuade this court that abstention is inappropriate here. A federal district court is required to abstain from exercising jurisdiction over a federal lawsuit in which (1) a party to a presently pending state proceeding (2) seeks relief from that proceeding in federal court (3) in spite of the fact that important state issues are involved and where (4) the party has an adequate opportunity to raise federal issues in the state proceeding. *Ohio Civil Rights Commission v. Dayton Christian Schools, Inc.*, 477 U.S. 619, 106 S.Ct. 2718, 2723, 91 L.Ed. 2d 512 (1986). Although the fact that plaintiff's cause of action arises under § 1983 *does* entitle him to waive any requirement that he exhaust state remedies, it *does not* mean that where a state proceeding is presently pending plaintiff has a right under § 1983 to terminate the state proceeding if the court would violate *Younger* by doing so. Plaintiff's argument to the contrary is not the law. The Supreme Court has held that application of *Younger* abstention is fully consistent with *Patsy v. Florida Board of Regents*, 457 U.S. 496, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982), which holds that litigants need not exhaust administrative remedies before bringing a § 1983 suit in federal court.

*Ohio Civil Rights Commission,* 106 S.Ct. at 2723 (applying *Younger* abstention to § 1983 action).

In *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), the Supreme Court held that a federal court may not enjoin a pending state criminal proceeding except in the very unusual situation where an injunction is necessary to prevent great and immediate irreparable injury. The Court justified its decision on both equitable principles and on the "more vital consideration" of the proper respect for the fundamental role of the States in our federal system. 401 U.S. at 43–44, 91 S.Ct. at 750–51.

The Supreme Court has since applied that concern for comity and federalism to pending state civil and administrative proceedings in which important state interests are involved. *Pennzoil,* 107 S.Ct. 1519; *Ohio Civil Rights Commission,* 477 U.S. 619, 106 S.Ct. 2718, 91 L.Ed.2d 512; *Moore v. Sims,* 442 U.S. 415, 99 S.Ct. 2371, 60 L.Ed.2d 994 (1979); *Trainor v. Hernandez,* 431 U.S. 434, 97 S.Ct. 1911, 52 L.Ed.2d 486 (1977); *Juidice v. Vail,* 430 U.S. 327, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977); *Huffman v. Pursue, Ltd.,* 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975); *Gibson v. Berryhill,* 411 U.S. 564, 93 S.Ct. 1689, 36 L.Ed. 2d 488 (1973).

Under *Younger,* a federal court must dismiss a federal action challenging (1) a pending state proceeding (2) in which important state interests are at stake, (3) where there is an adequate opportunity to raise constitutional claims in the state proceeding. *Younger,* 401 U.S. at 49, 91 S.Ct. at 753. There is no dispute over the fact that plaintiff seeks to enjoin a pending state proceeding and overturn numerous decisions rendered in that proceeding. Furthermore, there can be no serious dispute over the fact that the welfare and custody of children is among the most important and vital of state interests. "Family relations are a traditional area of state concern" and state child abuse laws reflect the "compelling state interest in quickly and effectively removing the victims of child abuse from their parents." *Moore,*

442 U.S. at 435, 99 S.Ct. at 2383. *See also World Famous Drinking Emporium, Inc. v. City of Tempe,* 820 F.2d 1079 (9th Cir. 1987).

Finally, the third requirement for *Younger* abstention exists in this case: plaintiff has been and still is afforded an adequate opportunity to present his constitutional claims in the state proceeding. State courts are as competent as federal courts to decide federal constitutional issues. *McNair,* 805 F.2d at 891 (*citing McCurry,* 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308). If plaintiff believes that his federal constitutional rights are being trampled in Judge Choy's court, his remedy lies with the Hawaii appellate courts and then by appeal to the United States Supreme Court. *See* 28 U.S.C. § 1257. Minimal respect for the state processes precludes any presumption that the state courts will not safeguard federal constitutional rights. *Middlesex County Ethics Committee v. Garden, Etc.,* 457 U.S. 423, 431, 102 S.Ct. 2515, 2521, 73 L.Ed.2d 116 (1982).

The court therefore finds that the doctrine of *Younger* abstention compels it to refuse to exercise its jurisdiction over this dispute. The policy that demands such abstention is a wise one for it is evident to the court that Susan Roe's best interests will be served by prompt adjudication of this matter in the family court. The court's careful review of the family court record indicates not only that the proceedings below have been fundamentally fair, but also that the allegations of sexual abuse are serious ones. Although the court cannot—and does not—determine the truth of these allegations, there is more here than just "a little girl who told a lie," as plaintiff would have this court believe. The state family court is the proper forum for that evaluation to take place and the State of Hawaii has drafted a comprehensive scheme for that purpose. The court will not enjoin that process without far more substantial evidence of great, immediate and irreparable harm than plaintiff has presented here.

Civil Number 87–0881, *Delahunty v. State of Hawaii, et al.* is DISMISSED.

IT IS SO ORDERED.