Mark REINHARDT, individually and on behalf of Marin Reinhardt, a minor, Plaintiff,

v.

The COMMONWEALTH OF MASSA- CHUSETTS DEPARTMENT OF SO- CIAL SERVICES; Nancy Lee Torrey, Scott Griffith, "John Doe", and "Jane Doe", in their individual capacity and in their official capacity as employees of the Commonwealth of Massachusetts Executive Office of Human Services Department of Social Services, Ann Joudrey, William Updegraff and Hon- orable George Bernhard, Defendants.

No. 89 Civ. 2198 (GLG).

United States District Court, S.D. New York.

June 28, 1989.

Maher & Brofman, Carmel, N.Y. (Ken- neth M. Bernstein, of counsel), for plaintiff.

Atty. Gen. of the Com. of Mass., Boston, Mass. (James M. Shannon and Gary J. Mena, of counsel), for defendants the Com. of Mass. Dept. of Social Services, Nancy Lee Torrey, Scott Griffith, "John Doe", and "Jane Doe".

Guernsey, Butts & Walsh, Poughkeepsie, N.Y. (Roland Butts, of counsel), for defen- dant Ann Joudrey.

William Updegraff, Poughkeepsie, N.Y., pro se.

Atty. Gen. of the State of N.Y., New York City (Robert Abrams and Ronald Tur- bin, of counsel), for defendant George Bernhard.

## OPINION

GOETTEL, District Judge:

This civil rights action is part of a com- plex of procedural maneuvers that has been evolving since September of 1988 in connection with a divorce of the marriage of the plaintiff and defendant Joudrey. Pursuant to a judgment dated January 19, 1988 and filed in Dutchess County, New York, Joudrey was granted custody of the couple's infant daughter Marin Reinhardt, age 6, while the plaintiff was given specific rights of visitation. The divorce judgment incorporated a separation agreement which

stated that neither the plaintiff nor Joudrey were authorized to remove Marin from the State of New York without the other's consent. The plaintiff alleges that on or about September 5, 1988, defendant Joudrey removed Marin from New York without the plaintiff's consent and without providing for future visitation by the plaintiff.

Consequently, the plaintiff filed a petition, dated September 15, 1988, in the Family Court of the State of New York, for custody of Marin. The plaintiff's custody proceeding was assigned to defendant Judge Bernhard, who directed that an investigation of involved parties be conducted by the Dutchess County Department of Probation. On January 6, 1989, during an interview conducted by the Dutchess County Department of Probation as part of the investigation, Marin stated that the plaintiff touched her genitals when he bathed her.[1] Fearing possible sexual abuse, Judge Bernhard referred the matter to the Child Protective Services of the Dutchess County Department of Social Services for additional investigation. At the same time, however, Judge Bernhard granted the plaintiff bi-weekly visitation with Marin. On or about January 27, 1989, the plaintiff had visitation with Marin as directed by the court. Prior to the next scheduled visitation, defendant Massachusetts Department of Social Services, by its agents, directed Joudrey not to comply with Judge Bernhard's visitation order and threatened Joudrey with a neglect proceeding and removal of the child if she complied with the visita-

tion schedule. On February 8, 1989, Judge Bernhard amended the visitation schedule, allowing the plaintiff to visit with his daughter every third weekend. On the advice of the Massachusetts Department of Social Services, Joudrey failed to comply with this visitation schedule.

On or about February 24, 1989, in response to a petition brought by the plaintiff in Family Court, Judge Bernhard directed that Joudrey deliver her daughter for visitation with the plaintiff. On March 2, 1989, however, upon the petition of defendant Joudrey, Judge Bernhard signed an *ex parte* order to show cause suspending visitation pending further determination by the court. Also on that date, Judge Bernhard appointed defendant William Updegraff as Law Guardian for Marin. On March 9, 1989, the plaintiff appeared before Judge Bernhard in opposition to defendant Joudrey's petition. Judge Bernhard stated at the hearing that he would permit supervised visitation by the plaintiff and examination of the child by a Child Sex Abuse Syndrome validator, conditioned, however, on approval by the State of Massachusetts. Judge Bernhard then adjourned the matter until May 19, 1989 for hearing and determination of the plaintiff's custody petition and resolution of visitation. Presumably because Massachusetts would not consent to visitation under the circumstances proposed by Judge Bernhard, no order permitting visitation was signed and the *ex parte* suspension of visitation remains in effect.[2] On May 19, 1989, the parties commenced a trial on the custo-

---

[1]  At oral argument on this motion, held on June 9, 1989, the attorney for the Massachusetts defendants and the defendant William Updegraff, appearing pro se, indicated that further interviews of Marin yielded more detailed allegations of sexual abuse. The veracity of these allegations is not an issue before us and we do not address it.

[2]  By letter dated March 14, 1989, the Massachusetts Department of Social Services indicated that it would not approve visitation between the plaintiff and Marin

until sexual abuse/incest therapy for both the child and her father indicate the appropriateness of such visitation, *and* such visitation is

supervised by a supervisor approved by the Duchess [sic] County Department of Social Services *and* occurs in conjunction with an appointment with the father's sexual abuse/incest therapist.... Massachusetts Department of Social Services further strongly opposes consultation with Marin Reinhardt and any sexual abuse validator as unnecessarily stressful and damaging to the child's emotional well-being.

Amended Complaint, Ex. H (emphasis in original). In essence, the position taken by Massachusetts would require the plaintiff to receive treatment for a problem that he vigorously denies exists.

dy petition.[3] After hearing the plaintiff's first witness, the trial was adjourned to July 3, 1989.

By summons and complaint dated March 29, 1989, the plaintiff instituted this proceeding pursuant to 42 U.S.C. § 1983 alleging that the suspension of visitation without a hearing violated his and his daughter's federal constitutional rights embodied in the fourth, fifth, ninth and fourteenth amendments.[4] The plaintiff seeks an order vacating Judge Bernhard's order of March 2, 1989 suspending visitation, prohibiting Judge Bernhard from modifying the divorce decree and custody order of the Supreme Court of the State of New York, and requiring the Family Court either to issue an order compelling the presence of Marin before a qualified Child Sex Abuse Syndrome validator, or, in the alternative, to hold a hearing where this issue could be litigated. The plaintiff additionally asks that this court issue an order of mandamus directing the Family Court to execute an order requiring defendant Joudrey to show cause why she should not be held in contempt. Finally the plaintiff asks that an order be issued by the Family Court removing defendant William Updegraff as Legal Guardian for Marin, and appointing another attorney. The plaintiff also seeks $500,-000 in actual damages and $250,000 in punitive damages from all the defendants, jointly and severally. All of the defendants have moved to dismiss the complaint.

▆ The common denominator of the various defendants' motions to dismiss is the *Younger* abstention doctrine. Based on notions of comity and federalism, this doctrine counsels a federal court to abstain from exercising its jurisdiction whenever the federal claims raised by the plaintiff could be asserted in ongoing state judicial proceedings that concern important state interests. *Younger v. Harris*, 401 U.S. 37, 49, 91 S.Ct. 746, 753, 27 L.Ed.2d 669 (1971). Although *Younger* was decided in response to ongoing state criminal proceedings, the Court has extended the doctrine to civil proceedings when important state interests are at stake and the plaintiff has an opportunity to raise his federal claims in an ongoing state proceeding. *Ohio Civil Rights Commission v. Dayton Christian Schools*, 477 U.S. 619, 627–29, 106 S.Ct. 2718, 2723–24, 91 L.Ed.2d 512 (1986). The Second Circuit has established a three-part test, emanating from *Dayton Christian Schools*, for determining when *Younger* abstention should be applied. The court must determine "(1) whether there is an ongoing state proceeding; (2) whether an important state interest is involved; and (3) whether the federal plaintiff has an adequate opportunity for judicial review of his constitutional claims during or after the proceeding." *Christ the King Regional High School v. Culvert*, 815 F.2d 219, 224 (2d Cir.), *cert. denied,* — U.S. —, 108 S.Ct. 102, 98 L.Ed.2d 63 (1987).

As to the first requirement, the custody and visitation proceeding brought in New York Family Court by the plaintiff is currently pending. A trial on the merits began on May 19, 1989 and will be continued on July 3, 1989. Moreover, "[i]t is settled that for purposes of *Younger* abstention that [sic] a proceeding is considered pending until all appellate court remedies have been exhausted." *Simmonds v. Deutsch*, No. 88–3881 slip op., 1989 WL 32835 (E.D. N.Y. March 27, 1989). Hence, an ongoing state proceeding exists. *See University*

---

3. Two subsequent orders to show cause brought by the plaintiff for interim relief were denied by Judge Bernhard. On April 12, 1989, the plaintiff filed an order to show cause seeking enforcement of the visitation provisions of the original custody order and ordering the evaluation of Marin by a Child Sex Abuse Syndrome validator. On April 21, 1989, the plaintiff filed a second order to show cause seeking the disqualification of Judge Bernhard and the removal of William Updegraff as Marin's Law Guardian. Both orders to show cause were denied after a hearing on May 17, 1989.

4. Specifically, the plaintiff contends that the states' interference with his relationship with his daughter deprived him of a liberty interest without due process. *Cleveland Bd. of Educ. v. LaFleur*, 414 U.S. 632, 639–40, 94 S.Ct. 791, 796, 39 L.Ed.2d 52 (1974) ("This Court has long recognized that freedom of personal choice in matters of marriage and family life is one of the liberties protected by the Due Process Clause of the Fourteenth Amendment.").

*Club v. City of New York,* 842 F.2d 37, 40 (2d Cir.1988); *Christ the King Regional High School v. Culvert,* 815 F.2d 219, 224 (2d Cir.), *cert. denied,* — U.S. ——, 108 S.Ct. 102, 98 L.Ed.2d 63 (1987). Moreover, there can be no doubt that a custody dispute that involves allegations of sexual abuse raises important state interests. Questions of family relations, especially when issues of custody and abuse are involved, are traditionally an area of state concern. *Moore v. Sims,* 442 U.S. 415, 435, 99 S.Ct. 2371, 2383, 60 L.Ed.2d 994 (1979).

The more difficult aspect of this motion is whether the plaintiff has an adequate opportunity to raise his federal claims in the underlying custody proceeding. The plaintiff argues that, although the custody trial will ultimately make a determination of permanent custody and visitation rights, he has not, and will not, be able to contest the interim order suspending visitation. The defendants argue both that the custody trial gives the plaintiff sufficient opportunity to be heard and that the plaintiff chose to forego judicial remedies in the state court system.

There is truth to the plaintiff's argument that the custody trial cannot afford him adequate relief because the issue of interim visitation will be mooted by a determination of permanent custody. This argument, however, ignores the alternative remedies available to an aggrieved state-court litigant. Initially, we question whether the plaintiff could have taken an appeal to the appellate division from the March 2, 1989 *ex parte* order suspending visitation. An appeal as of right may only be taken from a final order of disposition. N.Y.Fam. Ct.Act § 1112. Judge Bernhard's order was clearly an intermediate order to be modified after future proceedings by the court. Such an appeal can only be taken in the discretion of the appropriate appellate division. *Id.*[5] The plaintiff's federal challenges to Judge Bernhard's suspension order, however, could have been raised in an Article 78 proceeding pursuant to the New York Civil Practice Law and Rules. *See Campo v. New York City Employees' Retirement Sys.,* 843 F.2d 96, 101 (2d Cir.), *cert. denied,* — U.S. ——, 109 S.Ct. 220, 102 L.Ed.2d 211 (1988); *University Club v. City of New York,* 842 F.2d 37, 40–41 (2d Cir.1988); *Christ the King Regional High School v. Culvert,* 815 F.2d 219, 224–25 (2d Cir.), *cert. denied,* — U.S. ——, 108 S.Ct. 102, 98 L.Ed.2d 63 (1987).

Article 78 of the New York Civil Practice Law and Rules contains a complex of procedures that permit a civil litigant to challenge judicial or administrative action by way of certiorari, mandamus and prohibition. N.Y.Civ.Prac.L. & R. § 7801. Although the statute strictly limits the questions that may be raised in an Article 78 proceeding, it permits inquiry into "whether a determination was made in violation of lawful procedure." N.Y.Civ.Prac.L. & R. § 7803(3). "If the record before the Article 78 court demonstrates a lack of appropriate procedure, the Article 78 court has the authority and seemingly the duty to order the agency to conduct a proper hearing, regardless of the type of substantive claim involved." *Campo v. New York City Employees' Retirement Sys.,* 843 F.2d 96, 101 (2d Cir.), *cert. denied,* — U.S. ——, 109 S.Ct. 220, 102 L.Ed.2d 211 (1988). Indeed, the relief requested by the plaintiff in this action, to wit, prohibition and mandamus, is precisely that relief afforded in an Article 78 proceeding. Thus, it appears

**5.** Section 1112 of the Family Court Act also provides that

[a]n appeal from an intermediate or final order or decision in a case involving abuse may be taken as of right to the appellate division of the supreme court and may have preference over all other matters. Pending the determination of such appeal, such order or decision shall be stayed where the effect of such order or decision would be to discharge the child, if the family court or the court before which such appeal is pending finds

that such a stay is necessary to avoid imminent risk to the child's life or health. N.Y.Fam.Ct.Act § 1112. It is not immediately apparent whether the allegations of sexual abuse raised in the underlying custody petition would permit the plaintiff to take an appeal as of right from Judge Bernhard's order. Because we decide, *infra,* that the plaintiff has a sufficient opportunity to raise his federal claims in state court without resort to direct appeal, we need not decide whether section 1112 entitles the plaintiff to an immediate appeal.

that the plaintiff could have raised his challenge to Judge Bernhard's order in an Article 78 proceeding before the New York Supreme Court. *See, e.g., University Club v. City of New York,* 842 F.2d 37, 40 (2d Cir.1988) (federal constitutional claims may be raised in an Article 78 proceeding); *Christ the King Regional High School v. Culvert,* 815 F.2d 219, 224–25 (2d Cir.) (same), *cert. denied,* — U.S. —, 108 S.Ct. 102, 98 L.Ed.2d 63 (1987); *Susskind v. Stranger,* 122 A.D.2d 213, 504 N.Y.S.2d 746, 748 (2d Dep't 1986) (Article 78 proceeding from order directing that child support payments be held in escrow pending hearing); *Raysor v. Stern,* 68 A.D.2d 786, 418 N.Y.S.2d 713, 714 (4th Dep't) (Article 78 proceeding from order denying visitation and custody), *leave to appeal denied,* 48 N.Y.2d 605, 424 N.Y.S.2d 1025, 397 N.E.2d 395 (1979), *cert. denied,* 446 U.S. 942, 100 S.Ct. 2166, 64 L.Ed.2d 796 (1980).

The Second Circuit has repeatedly sanctioned abstention when the plaintiff's federal claims can be raised in an Article 78 proceeding. *See University Club v. City of New York,* 842 F.2d 37, 40–41 (2d Cir. 1988); *Christ the King Regional High School v. Culvert,* 815 F.2d 219, 224–25 (2d Cir.), *cert. denied,* — U.S. —, 108 S.Ct. 102, 98 L.Ed.2d 63 (1987); *see also Fruchtman v. New York State Bd. of Law Examiners,* 534 F.Supp. 692, 695 (S.D.N.Y.1982); *Surowitz v. New York City Employees' Retirement Sys.,* 376 F.Supp. 369, 377 (S.D.N.Y.1974). Abstention may be appropriate even when the statute of limitations has run on the plaintiff's right to bring an Article 78 proceeding. *See Campo v. New York City Employees' Retirement Sys.,* 843 F.2d 96, 101 (2d Cir.) (" '[S]o long as appellant had a reasonable time in which to seek Article 78 relief, he cannot make a legitimate claim of due process violation because his claim now may be barred.' " (quoting *Giglio v. Dunn,* 732 F.2d 1133, 1135 n. 1 (2d Cir.), *cert. denied,* 469 U.S. 932, 105 S.Ct. 328, 83 L.Ed.2d 265 (1984))), *cert. denied,* — U.S. —, 109 S.Ct. 220, 102 L.Ed.2d 211 (1988); *Surowitz v. New*

*York City Employees' Retirement Sys.,* 376 F.Supp. 369, 377 (S.D.N.Y.1974) ("[W]here it is plaintiff's own election which has eliminated the possibility of recourse to state remedies, he will not be heard to assert the absence of an available state remedy, but will be held to have made a choice and compelled to abide thereby.").[6]

Given the availability of review in state court, we are troubled by the plaintiff's claim that he had no opportunity to raise his federal claims in state court. "When a litigant has not attempted to present his federal claims in related state court proceedings, a federal court should assume that state procedures will afford an adequate remedy, in the absence of unambiguous authority to the contrary." *Pennzoil Co. v. Texaco, Inc.,* 481 U.S. 1, 107 S.Ct. 1519, 1528, 95 L.Ed.2d 1 (1987). This is not a case where state law prohibits the interposition of the constitutional claims. *Moore v. Sims,* 442 U.S. 415, 425–26, 99 S.Ct. 2371, 2378–79, 60 L.Ed.2d 994 (1979). Clearly, the Family Court of New York is bound by the Federal Constitution. Thus, notions of comity and federalism compel the assumption that the Family Court is competent to hear and thoughtfully consider the plaintiff's constitutional challenges. *Pennzoil Co. v. Texaco, Inc.,* 481 U.S. 1, 107 S.Ct. 1519, 1528, 95 L.Ed.2d 1 (1987). "Minimal respect for the state processes, of course, precludes any *presumption* that the state courts will not safeguard federal constitutional rights." *Middlesex Co. Ethics Comm. v. Garden State Bar Ass'n,* 457 U.S. 423, 431, 102 S.Ct. 2515, 2521, 73 L.Ed.2d 116 (1982) (emphasis in original).

In sum, it appears that the plaintiff has an adequate opportunity to present his due process challenges in state court. It is beyond peradventure that there is no requirement that the plaintiff exhaust his state remedies prior to asserting a claim pursuant to 42 U.S.C. § 1983 in federal court. *Patsy v. Florida Board of Regents,* 457 U.S. 496, 516, 102 S.Ct. 2557, 2568, 73 L.Ed.2d 172 (1982); *Steffel v. Thompson,*

---

6. Article 78 proceedings must be brought within four months of the challenged action. N.Y.Civ. Prac.L. & R. § 217. Consequently, the plaintiff's time to bring such an action apparently will expire on July 2, 1989.

415 U.S. 452, 472–73, 94 S.Ct. 1209, 1222, 39 L.Ed.2d 505 (1974). That well-founded principle, however,

> does not mean that where a state proceeding is presently pending plaintiff has a right under § 1983 to terminate the state proceeding if the court would violate *Younger* by doing so.... The Supreme Court has held that application of *Younger* abstention is fully consistent with *Patsy v. Florida Board of Regents,* 457 U.S. 496 [102 S.Ct. 2557, 73 L.Ed.2d 172] (1982)....

*Delahunty v. State of Hawaii,* 677 F.Supp. 1052, 1059 (D.Hawaii 1987) (emphasis in original), *quoted with approval in Simmonds v. Deutsch,* No. 88–3881 slip op. n. 4 (E.D.N.Y. March 27, 1989). The plaintiff's decision to forgo his state remedies in the first instance does not permit this court to disregard its responsibility to preserve notions of comity and federalism. Thus, absent exceptional circumstances, we find that *Younger* abstention is fully applicable to this case.[7]

The only remaining inquiry, therefore, is whether any of the recognized exceptions to *Younger* abstention exist. A federal court should not abstain if it finds that the state court proceeding is being pursued in bad faith or with the purpose of harassing the federal plaintiff. *Younger v. Harris,* 401 U.S. 37, 49, 91 S.Ct. 746, 753, 27 L.Ed.2d 669 (1971); *Huffman v. Pursue, Ltd.,* 420 U.S. 592, 611, 95 S.Ct. 1200, 1211, 43 L.Ed.2d 482 (1975). There has been no serious allegation that Judge Bernhard's actions are motivated by bad faith or improper animus. Although the plaintiff vigorously objects to Judge Bernhard's definition of due process, we cannot conclude that the state court proceedings have been pursued with the intent to harass the plaintiff. Consequently, this exception to *Younger* is inapplicable.

A second exception to *Younger* abstention exists when there are other "extraordinary circumstances in which the necessary irreparable injury can be shown even in the absence of the usual prerequisites of bad faith and harassment." *Younger v. Harris,* 401 U.S. 37, 53, 91 S.Ct. 746, 755, 27 L.Ed.2d 669 (1971). In *Moore v. Sims,* 442 U.S. 415, 99 S.Ct. 2371, 60 L.Ed.2d 994 (1979), the Court specifically rejected an argument, similar to that raised by the plaintiff herein, that the delay in affording a hearing in state court, incident to the temporary removal of children from their custodial parents, created exceptional circumstances making abstention inappropriate. As stated by the Court, "[u]nless we were to hold that every attachment issued to protect a child creates great, immediate, and irreparable harm warranting federal-court intervention, we are hard pressed to conclude that with the state proceedings in this posture federal intervention was warranted." *Id.* at 434, 99 S.Ct. at 2383.[8] "Nor does the[ ] loss of [Marin's] custody, which might prove temporary, constitute the sort of serious, imminent, and irreparable harm that conceivably might warrant extraordinary federal court intervention." *Malachowski v. City of Keene,* 787 F.2d 704, 709 (1st Cir.), *cert. denied,* 479 U.S. 828, 107 S.Ct. 107, 93 L.Ed.2d 56 (1986). In light of the fact that the trial on the plaintiff's custody petition is being held forthwith, and the matter of permanent custody and visitation will be resolved, we find that the plaintiff is not suffering the irreparable harm that would justify abandonment of

---

7. Several courts that have been faced with similar factual circumstances uniformly have found that the state's compelling interest in protecting the welfare of children mandates federal court abstention. *See Moore v. Sims,* 442 U.S. 415, 435, 99 S.Ct. 2371, 2383, 60 L.Ed.2d 994 (1979); *Brunken v. Lance,* 807 F.2d 1325, 1330–31 (7th Cir.1986); *Malachowski v. City of Keene,* 787 F.2d 704, 708–09 (1st Cir.), *cert. denied,* 479 U.S. 828, 107 S.Ct. 107, 93 L.Ed.2d 56 (1986); *DeSpain v. Johnston,* 731 F.2d 1171, 1178–80 (5th Cir.1984); *Simmonds v. Deutsch,* No. 88–3881 slip op. (S.D.N.Y. March 27, 1989) (Available on WESTLAW); *Delahunty v. State of Hawaii,*

677 F.Supp. 1052, 1059 (D.Hawaii 1987); *Donkor v. City of New York Human Resources Admin.,* 673 F.Supp. 1221, 1226–27 (S.D.N.Y.1987).

8. In *Moore,* at the time the federal injunction was requested, the plaintiffs had regained custody of their child and a specific date had been set on the state's "Suit Affecting the Parent–Child Relationship." *Id.* Although in this case the plaintiff has not recovered his right to visitation with Marin, the hearing to determine custody and visitation is imminent.

the well-established abstention principles elaborated above.[9]

This case presents a "sensitive area of social policy upon which the federal courts ought not to enter unless no alternative to its adjudication is open." *Railroad Comm'n v. Pullman Co.*, 312 U.S. 496, 498, 61 S.Ct. 643, 644, 85 L.Ed. 971 (1941). We believe such an alternative is readily available in the currently pending Family Court proceeding. Consequently, we decline to exercise jurisdiction over this action and the complaint is dismissed in its entirety.[10] The clerk will enter judgment for the defendants.

SO ORDERED.

**9.** The plaintiff has moved in this action for a preliminary injunction seeking much of the relief demanded in the amended complaint. Our conclusion that the plaintiff has not suffered extraordinary, irreparable harm would counsel against granting a preliminary injunction. Because we abstain in this action, however, we need not consider the plaintiff's motion.

**10.** Although represented by counsel at oral argument, it does not appear that defendant Joudrey has moved to dismiss the action or joined in the motions of the other defendants. Our decision to abstain from exercising jurisdiction over this matter applies equally to all the defendants. Consequently, we exercise our power to dismiss the complaint as against Joudrey *sua sponte. See Greenberg v. Veteran*, 710 F.Supp. 962, 966–67 (S.D.N.Y.1989) (available on WESTLAW).