**M.M. CASSIM, M.D., dba M.M. Cassim, M.D., P.C., Plaintiff-Appellant,**

v.

**Otis BOWEN, Secretary, United States Department of Health and Human Services, and Oregon Medical Professional Review Organization and their employees and agents, Defendants-Appellees.**

**No. 86–3982.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 3, 1986.

Decided Aug. 12, 1987.

---

James N. Westwood, Steven O. Rosen, and Paul Blaylock, Portland, Or., for plaintiff-appellant.

James M. Miles, Seattle, Wash., for the Federal defendant-appellee.

George S. Cooper III, Portland, Or., for defendant-appellee Oregon Medical Professional Review Organization.

Before HUG, SKOPIL and FLETCHER, Circuit Judges.

SKOPIL, Circuit Judge:

M.M. Cassim is a Medicare participating physician. He argues that as a matter of due process he is entitled to a full evidentiary hearing before the Secretary of Health and Human Services can suspend him from Medicare and publish notice of his suspension in a local newspaper. The district court denied Cassim's motion for a preliminary injunction. We affirm.

## FACTS AND PROCEEDINGS BELOW

Cassim is a licensed and practicing surgeon in Dallas, Oregon. Forty percent of the income from his practice comes from Medicare patients. In early 1985 the Oregon Medical Professional Review Organization (OMPRO) initiated a routine review of the quality of Cassim's surgical care. OMPRO has a contract with the Department of Health and Human Services (HHS) to operate as the Medicare peer review organization for the State of Oregon.

After its initial review OMPRO decided to examine all surgery performed by Cassim during a prior six-month period. In April 1985 OMPRO informed Cassim and the hospital where he practiced of its review. OMPRO checked the medical records of eighty of Cassim's patients and identified thirteen "gross and flagrant" violations of Cassim's obligation under the Social Security Act to adhere to professionally recognized standards.

In making its investigation, OMPRO did not discuss the cases with Cassim. Nor did it contact any of the patients, the attending nurses, the other physicians involved in the care of the patients, or the hospital's quality assurance committee. Finally, OMPRO did not seek a complete copy of all medical records related to the care of the patients. It lacked some x-rays, scans, and other lab data.

On October 30, 1985 OMPRO informed Cassim of its findings. It listed the patient records it had examined and provided Cassim with its analysis and conclusions. OMPRO gave Cassim thirty days to submit information to "rebut or mitigate" its findings and allowed him to make a "written request to meet with representatives of OMPRO to discuss case specifics." OMPRO warned him that its preliminary recommendation was exclusion from the Medicare program.

Cassim then met with OMPRO's surgical review panel and medical director. OMPRO did not allow Cassim to present witnesses or to confront adverse witnesses. Cassim was, however, represented by counsel. A transcript was made of the meeting. Cassim presented his side of the story and

introduced exculpatory documentation, including lab data missing from OMPRO's records. The OMPRO panel questioned him on the techniques he had used in caring for his patients. After the meeting, "based on the additional information ... [Cassim] provided," OMPRO dropped five of the thirteen alleged violations.

OMPRO recommended to the Office of Inspector General (OIG) of HHS that Cassim be suspended from the Medicare program for a minimum of one year and informed Cassim of its recommendation. It told him that he had thirty days to submit to OIG "any additional material which affects the recommendation to exclude you from participation in the Medicare program." Cassim, through his attorney, took advantage of this opportunity to defend himself and submitted additional material.

Notwithstanding Cassim's efforts, OIG affirmed OMPRO's findings. It ruled that Cassim had performed unnecessary surgery on eight patients, who ranged in age from 66 to 86. The surgery constituted gross and flagrant violations of his duty under the Social Security Act. It placed his patients in "high risk" situations or in "imminent danger," with the "potential for patient harm." OIG specifically noted that it had reviewed and rejected the material submitted by Cassim. It excluded Cassim from Medicare for one year and informed him it would publish "a notice in a local newspaper to advise the community of the effective date, the duration, and the reason for this exclusion." See 42 U.S.C. § 1320c–5(b)(2) (1982); 42 C.F.R. § 1004.100 (1986). Finally, OIG told Cassim of his right to appeal the ruling to an administrative law judge (ALJ). See 42 U.S.C. § 1320c–5(b)(4) (1982); 42 C.F.R. § 1004.130 (1986). Neither the Social Security Act nor its regulations guarantee the timeliness of the hearing on appeal.

Cassim then sought a preliminary injunction in district court. He argued that the Act and its regulations violated due process (1) in not providing for a full-blown pre-exclusion and pre-publication (predeprivation) ALJ hearing, and (2) in not guaranteeing the promptness of a post-exclusion and post-publication (post-deprivation) hearing. The district court held that it had jurisdiction over Cassim's action but denied the preliminary injunction. Cassim timely appealed. We granted a stay pending the appeal.

## DISCUSSION

### I. Subject Matter Jurisdiction

■ 42 U.S.C. § 405(g) (1982) provides a claimant who has exhausted an agency's administrative process with the right to obtain judicial review. In relevant part, it states that "[a]ny individual, after any final decision of the Secretary made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision." The "final decision" of the Secretary contains two elements: (1) the "jurisdictional" non-waivable requirement of presentment of the claim for benefits (presentment); and (2) the "waivable" requirement of exhaustion of administrative remedies (exhaustion). *Hironymous v. Bowen,* 800 F.2d 888, 894 (9th Cir.1986) (citing *Mathews v. Eldridge,* 424 U.S. 319, 328–30, 96 S.Ct. 893, 899–900, 47 L.Ed.2d 18 (1976)). The Secretary argues that Cassim has not complied with those requirements. We disagree.

■ Cassim meets the presentment requirement. Presentment can be fulfilled by contesting tentative agency determinations. *Eldridge,* 424 U.S. at 329, 96 S.Ct. at 900 (presentment found where claimant answered a state agency questionnaire and wrote a letter in response to the state's initial determination that his disability had ceased). Cassim repeatedly challenged the Secretary, both during the review process and after OIG's determination. He requested a meeting with OMPRO and met with its review panel. He later submitted materials to OIG to contest OMPRO's findings. Finally, after being sanctioned by OIG, Cassim sent a letter to both OMPRO and the Secretary, "stating that if we were not able to reverse the exclusion before we had a due process hearing, it was [not] our intent to pursue our administrative remedy but to seek judicial relief."

The exhaustion requirement is also satisfied. Exhaustion may be waived, either by the Secretary, *Weinberger v. Salfi*, 422 U.S. 749, 766–67, 95 S.Ct. 2457, 2467, 45 L.Ed.2d 522 (1975), or by the courts, *Eldridge*, 424 U.S. at 330–32, 96 S.Ct. at 900–01. The Secretary has not waived exhaustion; we must determine whether waiver is appropriate. Courts may waive exhaustion because "cases may arise where a claimant's interest in having a particular issue resolved promptly is so great that deference to the agency's judgment is inappropriate." *Id.* at 330, 96 S.Ct. at 900. The claimant must satisfy a three-part test. The claim at issue must be (1) collateral to a substantive claim of entitlement (collaterality), (2) colorable in its showing that refusal of the relief sought will cause an injury which retroactive payments cannot remedy (irreparability), and (3) one whose resolution would not serve the purposes of exhaustion (futility). *Id.* at 330–32, 96 S.Ct. at 900–01; *see also Bowen v. City of New York*, 477 U.S. 467, 106 S.Ct. 2022, 2031–32, 90 L.Ed.2d 462 (1986) (alternatively describing test as composed of two parts, exhaustion and irreparability, with an examination of futility).

Cassim has shown collaterality. The Secretary concedes that Cassim's due process claim is collateral to his request for benefits. *See Ram v. Heckler*, 792 F.2d 444, 446 (4th Cir.1986); *accord Koerpel v. Heckler*, 797 F.2d 858, 862 (10th Cir.1986). The Secretary argues, however, that Cassim's due process claim is not colorable. A claim is colorable if it is not "wholly insubstantial, immaterial, or frivolous." *Boettcher v. Secretary of Health and Human Services*, 759 F.2d 719, 722 (9th Cir. 1985). Cassim raises a serious constitutional challenge. It is not insubstantial, immaterial, or frivolous.

Moreover, Cassim has demonstrated irreparability. The Secretary all but concedes that expulsion and publication would irreparably injure Cassim. *See Koerpel*, 797 F.2d at 862 (doctor's "reputation could be irreparably damaged in a way that could not be remedied by subsequent administrative appeals"). Finally, Cassim has established futility. Requiring him to exhaust administrative remedies would not serve the policies underlying exhaustion. Given the constitutional nature of his challenge, "there was nothing to be gained from permitting the compilation of a detailed factual record, or from agency expertise." *City of New York*, 106 S.Ct. at 2032. We conclude that Cassim fulfilled the jurisdictional requirements of section 405(g).

## II. Preliminary Injunction

A party seeking a preliminary injunction must fulfill one of two standards, described in this circuit as "traditional" and "alternative." *American Motorcyclist Ass'n v. Watt*, 714 F.2d 962, 965 (9th Cir. 1983). Under the traditional standard, a court may issue preliminary relief if it finds that (1) the moving party will suffer irreparable injury if the relief is denied; (2) the moving party will probably prevail on the merits; (3) the balance of potential harm favors the moving party; and (4) the public interest favors granting relief. *Martin v. International Olympic Committee*, 740 F.2d 670, 674–75 (9th Cir.1984) (citing *William Inglis & Sons Baking Co. v. ITT Continental Baking Co.*, 526 F.2d 86, 87 (9th Cir.1975)). Under the alternative standard, the moving party may meet its burden by demonstrating either (1) a combination of probable success and the possibility of irreparable injury or (2) that serious questions are raised and the balance of hardships tips sharply in its favor. *Benda v. Grand Lodge of IAM*, 584 F.2d 308, 314–15 (9th Cir.1978), *cert. dismissed*, 441 U.S. 937, 99 S.Ct. 2065, 60 L.Ed.2d 667 (1979).

The district court held that Cassim failed to satisfy either standard. Under the traditional standard, the court found that Cassim had neither established that he would probably prevail on the merits, nor that the balance of potential harm favored him. Under the alternative standard, it ruled that (1) Cassim raised serious questions, but the balance of hardships did not tip sharply in his favor; and (2) Cassim demonstrated the possibility of irreparable injury, but not the probability of success on the merits.

Cassim challenges the district court's analysis under the alternative standard. He contends that the court erred in its calculation of probable success on the merits and in determining the balance of hardships. We will reverse the district court only for an abuse of discretion or for relying on an erroneous legal standard or on clearly erroneous findings of fact. *Wilson v. Watt*, 703 F.2d 395, 398 (9th Cir.1983).

### 1. Balance of Hardships

Cassim argues that the district court improperly balanced the hardships. First, he emphasizes that his livelihood, reputation, and professional career will be irreparably harmed. He contends the stigma of exclusion and publication could not be removed even if the ALJ completely exonerated him. Second, he asserts that the district court mistakenly believed he threatened the lives or health of his patients. Instead, he claims, OIG accused him of skillfully performing excessive surgery.

We reject Cassim's argument even though we recognize the possibility of irreparable harm created by the Secretary's sanctions. Cassim is simply mistaken in asserting that HHS did not believe he threatened the health of his patients. OIG charged Cassim with doing unnecessary surgery in eight cases culled from a six-month period. In those eight cases, Cassim's patients ranged in age from 66 to 86. In each case, OIG concluded that Cassim had placed his patients in "high risk" situations or in "imminent danger." The Secretary persuasively argues that unnecessary surgery on elderly patients endangers their health.

 Against the harm Cassim might suffer we must balance the harm his patients might suffer. We affirm the district court's finding that the balance of hardships neither tips sharply in Cassim's favor, nor favors him. Cassim fails under one prong of the alternative standard. Under the other prong, he must demonstrate a combination of probable success and the possibility of irreparable injury. Cassim has shown the possibility of irreparable injury. Thus, we examine his probability of success on the merits.

### 2. Probability of Success on the Merits

Cassim alleges that as a matter of due process he is entitled to a full-blown predeprivation hearing. He also contends that the Social Security Act and its regulations violate due process because they fail to guarantee the promptness of the post-deprivation hearing. The district court, however, found only that Cassim would not succeed in establishing a right to a predeprivation hearing. It did not rule on Cassim's contention that he is entitled to a guarantee of a prompt post-deprivation hearing. Nevertheless, we affirm the district court's denial of Cassim's motion for a preliminary injunction.[1]

The Due Process Clause protects interests in life, liberty, and property. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538 n. 3, 105 S.Ct. 1487, 1491 n. 3, 84 L.Ed.2d 494 (1985). Cassim argues that he has a property right in continuing to participate in the Medicare program and a liberty interest in prohibiting the government from publishing notice of his exclusion. The Secretary does not challenge either assertion. The district court made no finding one way or the other. It appeared to proceed on the assumption that Cassim had presented a constitutionally protected interest.

We assume, arguendo, that Cassim has implicated either a property right or a liberty interest. On similar facts, the Fourth Circuit has held that a doctor possesses a property right in continued participation in the Medicaid program. *See Ram*, 792 F.2d at 447. The Tenth Circuit, on the other hand, while refusing to find a property right, has found a liberty interest. *Koerpel*, 797 F.2d at 863–66. *See also Case v. Weinberger*, 523 F.2d 602, 606 (2d Cir.1975) (operators of nursing home have property interest); *but see Geriatrics, Inc. v. Har-*

---

1. As part of his argument on the probability of success on the merits Cassim asserts that the ALJ will probably reduce or reverse OIG's sanction. This argument misses the point. The "merits" at issue involve the due process claim, not whether OIG properly sanctioned Cassim.

*ris,* 640 F.2d 262, 264–65 (10th Cir.) (operators of nursing home have insufficient property interest to require a pretermination hearing), *cert. denied,* 454 U.S. 832, 102 S.Ct. 129, 70 L.Ed.2d 109 (1981).

"[O]nce it is determined that the Due Process Clause applies, 'the question remains what process is due.'" *Loudermill,* 470 U.S. at 541, 105 S.Ct. at 1493 (quoting *Morrissey v. Brewer,* 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972)). "To determine what process is due, we must balance the risk of an erroneous deprivation, the state's interest in providing specific procedures and the strength of the individual's interest." *United States v. Crozier,* 777 F.2d 1376, 1383 (9th Cir.1985); *see Eldridge,* 424 U.S. at 335, 96 S.Ct. at 903. We turn then to this three-fold balancing test.

Cassim's interests are substantial. "The more important the interest and the greater the effect of its impairment, the greater the procedural safeguards the state must provide to satisfy due process." *Haygood v. Younger,* 769 F.2d 1350, 1355–56 (9th Cir.1985) (en banc), *cert. denied sub nom. Cranke v. Haygood,* —— U.S. ——, 106 S.Ct. 3333, 92 L.Ed.2d 739 (1986). On the one hand, only forty percent of Cassim's income comes from Medicare. *Compare Ritter v. Cohen,* 797 F.2d 119, 124–25 (3rd Cir.1986) (physician's due process challenge rejected even though 99% of his practice based on Medicaid). Cassim may still treat Medicare patients. If he prevails in his administrative appeal, he must be reimbursed. A successful appeal would also help restore his reputation and practice. The Secretary would have to reinstate Cassim as a Medicare participating physician, 42 C.F.R. § 1004.120(b) (1986), and give notice of his reinstatement to the public, 42 C.F.R. § 1001.134(a)(2) (1986). On the other hand, even that vindication may not remove all of the stigma associated with the Secretary's sanctions. Some damage might remain. Cassim's patients and members of the public may distrust him.

The Government's interests, however, are compelling. In the judgment of OM-PRO and OIG, Cassim performed unnecessary surgery. Such surgery wastes public resources and, even more important, threatens the patient's health. OIG found that Cassim placed his patients in situations with the "potential for ... harm." In enacting 42 U.S.C. § 1320c–5, Congress sought to protect Medicare beneficiaries from questionable medical practices. As an indication of the extent of Congress' concern, if the Secretary fails to act within 120 days of a peer review organization's recommendation, then the physician being investigated is automatically excluded from Medicare. 42 U.S.C. § 1320c–5(b)(1) (1982). Requiring full-blown predeprivation hearings would frustrate Congress' intent and impede the Secretary's ability to act quickly.[2] It would also impose significant administrative costs.

Nor is the risk of erroneous deprivation unacceptable in this case. "The essential requirements of due process ... are notice and an opportunity to respond." *Loudermill,* 470 U.S. at 546, 105 S.Ct. at 1495. Both reduce the risk of error. Here, Cassim received plentiful notice. OMPRO informed him of its investigation, findings, and adverse recommendation to OIG. OIG in turn disclosed the sanctions to him. Cassim also received an opportunity to respond in person and in writing to the charges leveled against him. He met with an OM-PRO review panel and was given the chance to defend himself. While OMPRO initially acted without complete medical records, it informed Cassim of the records

---

**2.** A long-established principle of due process jurisprudence is that Government must sometimes be allowed to act promptly to avoid public harm. *See Mackey v. Montrym,* 443 U.S. 1, 17–18, 99 S.Ct. 2612, 2620–21, 61 L.Ed.2d 321 (1979) (suspension of driver's license for refusal to take breathalyzer test); *Dixon v. Love,* 431 U.S. 105, 114, 97 S.Ct. 1723, 1728, 52 L.Ed.2d 172 (1977) (suspension of driver's license for repeated traffic offenses); *Goss v. Lopez,* 419 U.S. 565, 582, 95 S.Ct. 729, 740, 42 L.Ed.2d 725 (1975) (suspension of dangerous or disruptive students to protect school); *Ewing v. Mytinger & Casselberry, Inc.,* 339 U.S. 594, 599–600, 70 S.Ct. 870, 872–73, 94 L.Ed. 1088 (1950) (seizure of mislabeled but physically harmless drugs); *North Am. Cold Storage Co. v. City of Chicago,* 211 U.S. 306, 315–21, 29 S.Ct. 101, 104–06, 53 L.Ed. 195 (1908) (seizure of allegedly diseased poultry).

upon which it had relied. Cassim was able to supply OMPRO with missing data; OMPRO dropped five of the thirteen charges against him. OIG then gave Cassim a chance to defend himself in writing and reviewed the material he submitted.[3]

■ We reject Cassim's predeprivation due process challenge. "In general, 'something less' than a full evidentiary hearing is sufficient prior to adverse administrative action." *Loudermill,* 470 U.S. at 545, 105 S.Ct. at 1495 (citing *Eldridge,* 424 U.S. at 343, 96 S.Ct. at 907). In only one case, *Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), has the Supreme Court required a full adversarial evidentiary hearing prior to adverse government action. *Id.* In *Goldberg,* the Court noted that the "crucial factor" was that an otherwise eligible recipient could be deprived "of the very means by which to live while he waits." *Goldberg,* 397 U.S. at 264, 90 S.Ct. at 1018. In contrast, Cassim's interests are not as compelling. Consistent with the requirements of due process, he received " 'some form of hearing' " prior to deprivation. *Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 433, 102 S.Ct. 1148, 1156, 71 L.Ed.2d 265 (1982) (quoting *Board of Regents v. Roth,* 408 U.S. 564, 570–71 n. 8, 92 S.Ct. 2701, 2705–06 n. 8, 33 L.Ed.2d 548 (1972)).[4]

■ "Our holding rests in part on the provisions ... [providing] for a full post-termination hearing." *Loudermill,* 470 U.S. at 546, 105 S.Ct. at 1496. Cassim is entitled to a full hearing on appeal and to district court review of the Secretary's final decision. He contends, however, that the statute and its regulations violate due process in failing to guarantee a timely post-deprivation hearing. The Secretary has represented that an ALJ decision could

be reached four or five months after Cassim requests a hearing. Cassim does not challenge the constitutionality of the four or five month time period. Instead, he launches a facial attack on the statute and its regulations.

Due process "requires provision of a hearing 'at a meaningful time.' At some point, a delay in the post-termination hearing would become a constitutional violation." *Loudermill,* 470 U.S. at 547, 105 S.Ct. at 1496 (citations omitted). The general rule is that the less the predeprivation process, the greater must be the post-deprivation process. *Id.* at 547 n. 12, 105 S.Ct. at 1496, n. 12; *Mackey v. Montrym,* 443 U.S. 1, 12, 99 S.Ct. 2612, 2618, 61 L.Ed.2d 321 (1979). While the predeprivation process Cassim received served as an "initial check against mistaken decisions," *Loudermill,* 470 U.S. at 545, 105 S.Ct. at 1495, it was hardly exhaustive. Cassim is entitled to a prompt post-deprivation hearing. *See Ram,* 792 F.2d at 447; *but see Ritter,* 797 F.2d at 124 (alleged delay of more than eleven months in deciding appeal not impermissible).

Nevertheless, we are unwilling to invalidate a statute because it might, but need not, be applied in an unconstitutional manner." *McCahey v. L.P. Investors,* 774 F.2d 543, 553 (2d Cir.1985) (refusal to invalidate on due process grounds New York post-judgment procedures which did not guarantee a prompt post-seizure hearing). Cassim has not shown that he will not receive an expedited hearing. Furthermore, it is not enough merely to assert that the denial of a "speedy resolution" violates due process. "This reveals nothing about the delay except that it stemmed in part from the thoroughness of the procedures." [5] *Loudermill,* 470 U.S. at 547, 105 S.Ct. at 1496.

---

3. Moreover, the probable value of a predeprivation hearing would not be especially great. *Ritter,* 797 F.2d at 123. "Issues such as the medical necessity of particular treatments ... are not determined to any great extent on credibility grounds.... The ... decision to terminate [from Medicaid] is 'based in most cases upon routine, standard, unbiased reports by health care professionals.' " *Id.* (quoting *Town Court Nursing Center, Inc. v. Beal,* 586 F.2d 266, 268 (3rd Cir.1978)).

4. Recent cases from other circuits have rejected similar due process challenges by physicians. *See Koerpel,* 797 F.2d at 868–69 (10th Cir.1986); *Ritter,* 797 F.2d at 124 (3rd Cir.1986); *Ram,* 792 F.2d at 446 (4th Cir.1986).

5. *Loudermill* is particularly instructive. In *Loudermill,* the Cleveland Board of Education summarily fired an employee without providing any form of a pretermination hearing. Under Ohio state law, the employee could appeal the

Cassim's reliance on *Barry v. Barchi*, 443 U.S. 55, 99 S.Ct. 2642, 61 L.Ed.2d 365 (1979), is misplaced. In *Barchi*, the New York State Racing and Wagering Board suspended Barchi's horse trainer's license for fifteen days after a post-race test revealed that a horse trained by him had been drugged. Barchi's presuspension hearing consisted of two lie-detector tests. *Id.* at 59, 65, 99 S.Ct. at 2646, 2649. The applicable New York statute afforded Barchi a post-suspension hearing but specified no time in which the hearing had to be held and allowed the Board to wait until thirty days after the hearing to issue a final order. The Supreme Court held that the statute violated due process, since it permitted the state to sanction a trainer without "assurance of a prompt post-suspension hearing." *Id.* at 68, 99 S.Ct. at 2651.

*Barchi* is distinguishable. Given the summary nature of Barchi's presuspension process and the briefness of his suspension, a prompt post-suspension hearing was critical. The Court was careful to note that "the provision for an administrative hearing, neither on its face nor as applied in this case, assured a prompt proceeding and prompt disposition of the outstanding issues.... [I]t is as likely as not that Barchi and others subject to relatively brief suspensions would have no opportunity to put the State to its proof until they have suffered the full penalty imposed." *Id.* at 66, 99 S.Ct. at 2650. Here, Cassim's suspension from Medicare is for one year. He could receive an ALJ decision four or five months after he requests a hearing. Thus, he will put HHS to its proof before he suffers the full penalty imposed. Cassim may even be able to receive an expedited hearing. Moreover, the ALJ is not authorized to delay issuing an order after a hearing. Finally, Cassim received far greater predeprivation process than Barchi.

Cassim has failed to show the probability of success on the merits. We vacate the temporary stay. The district court's denial of the motion for preliminary injunction is AFFIRMED.

---

Board's decision but was guaranteed neither a prompt hearing nor a prompt disposition. 470 U.S. at 546 n. 11, 105 S.Ct. at 1496 n. 11. The employee received a decision nine months after

he had filed his appeal. He argued that the delay violated due process. The Supreme Court disagreed and upheld the statute as applied.