79 F.3d 1153
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
INTERNATIONAL ASSOCIATION OF PLUMBING AND MECHANICAL
OFFICIALS, Plaintiff-Appellee,
v.
INTERNATIONAL CONFERENCE OF BUILDING OFFICIALS; Building
Officials and Code Administrators International,
Defendants-Appellants.
 No. 95-55944.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Dec. 12, 1995.
Decided March 15, 1996.
 
 1
 Before: SCHROEDER and O'SCANNLAIN, Circuit Judges; BURNS,* District Judge.
 
 
 2
 MEMORANDUM**
 
 
 3
 International Conference of Building Officials ("ICBO") and Building Officials and Code Administrators International ("BOCA") appeal the district court's order granting a preliminary injunction to International Association of Plumbing and Mechanical Officials ("IAPMO"). The district court enjoined ICBO and BOCA from publishing and distributing certain model plumbing and mechanical codes. We reverse and remand.
 
 
 4
 * A grant or denial of a preliminary injunction should be reversed only where the district court (1) abused its discretion, (2) based its decision on an erroneous legal standard, or (3) based its decision on clearly erroneous findings of fact. Miller v. California Pacific Medical Center, 19 F.3d 449, 455 (9th Cir.1994) (en banc).[1] This court has outlined the following standards governing the awarding of preliminary injunctive relief in federal court:
 
 
 5
 A party seeking a preliminary injunction must fulfill one of two standards, described in this circuit as "traditional" and "alternative." Under the traditional standard, a court may issue preliminary relief if it finds that (1) the moving party will suffer irreparable injury if the relief is denied; (2) the moving party will probably prevail on the merits; (3) the balance of potential harm favors the moving party; and (4) the public interest favors granting relief. Under the alternative standard, the moving party may meet its burden by demonstrating either (1) a combination of probable success and the possibility of irreparable injury or (2) that serious questions are raised and the balance of hardships tips sharply in its favor.
 
 
 6
 Cassim v. Bowen, 824 F.2d 791, 795 (9th Cir.1987) (quotations, citations omitted).
 
 
 7
 The district court's findings of fact and conclusions of law do not contain any indication that the court balanced the hardships to the parties. Because such a finding is a necessary element of both the traditional and the second alternative standards for injunctive relief, the injunction in this case may be upheld only if the district court properly applied the first alternative standard, i.e. if it properly found that IAPMO had demonstrated (1) a combination of probable success on the merits and (2) the possibility of irreparable injury. We have previously noted that "[t]hese two formulations represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases." Miller, 19 F.3d at 456 (quotations, citation omitted).
 
 II
 
 8
 * We conclude that the district court erred in ruling that IAPMO had demonstrated irreparable injury.
 
 
 9
 First, IAPMO submitted no evidence on the issue before the district court issued its order granting the injunction, and thus failed to meet its burden of proof.[2] See, e.g., Caribbean Marine Services Co., Inc. v. Baldrige, 844 F.2d 668, 674 (9th Cir.1988) ("plaintiff must demonstrate immediate threatened [irreparable] injury as a prerequisite to preliminary injunctive relief") (emphasis in original).
 
 
 10
 Second, while the district court concluded that IAPMO had suffered irreparable injury, it did not make any factual finding of irreparable injury, nor did it specify the nature of the injury which IAPMO had suffered. Instead, the court based its conclusion solely on a contractual provision in which ICBO conceded that IAPMO would suffer irreparable injury in the event of a contract breach. We believe this was error. IAPMO does not cite, nor are we aware of, any authority which allows a petitioner seeking injunctive relief to meet its burden on the issue of irreparable injury solely by referring to such a contractual provision. The limited number of cases which this court has found also seem to undermine the proposition. See, e.g., Baker's Aid, a Division of M. Raubvogel Co., Inc. v. Hussmann Foodservice Co., 830 F.2d 13, 16 (2d Cir.1987) ("contractual language declaring money damages inadequate in the event of a breach does not control the question whether preliminary injunctive relief is appropriate"); Firemen's Ins. Co. of Newark, N.J. v. Keating, 753 F.Supp. 1146, 1154 (S.D.N.Y.1990) ("The [contractual provision], likewise, does not, by its mere presence in the [contracts], satisfy the requirement that plaintiff make a showing of likely irreparable harm before the Court will grant its motion for a preliminary injunction. To the contrary, the Court must fully apply the same test for irreparable harm that it would were the [provision] not to exist.") (citation omitted). ICBO's contractual concession does not abrogate either IAPMO's obligation to demonstrate a particular threatened irreparable injury, nor the district court's obligation to make specific factual findings that such injury (1) is in fact irreparable and (2) might actually occur absent an injunction.[3]
 
 
 11
 Third, this court has held that a long delay in requesting a preliminary injunction "implies a lack of urgency and irreparable harm." Oakland Tribune, Inc. v. Chronicle Publishing Co., Inc., 762 F.2d 1374, 1377 (9th Cir.1985). IAPMO's original complaint was apparently filed in October, 1994; however, it did not seek a preliminary injunction until May, 1995. IAPMO argues that it was attempting to seek a settlement during that period; however, the fact that it waited seven months before seeking injunctive relief undermines its claim of immediate threatened irreparable injury.
 
 
 12
 Fourth, IAPMO's appellate brief identifies only one potential injury that it would suffer from ICBO's conduct: a loss of market share. However, such a loss may usually be remedied with monetary damages. See, e.g., Oakland Tribune, 762 F.2d at 1376 (newspaper not entitled to injunctive relief because its claim that competitor caused loss of "circulation and revenue" alleged "purely monetary harm measurable in damages"); American Cyanamid Co. v. U.S. Surgical Corp., 833 F.Supp. 92, 132 (D.C.Conn.1992), appeal dismissed, 9 F.3d 977 (Fed.Cir.1993) ("Since market share is measured by sales, money damages are generally ascertainable for the loss of market share."). On the limited record available to this court, we conclude that IAPMO has failed to explain why such damages would be inadequate in this case.
 
 
 13
 For these reasons, we find that the district court erred in concluding that IAPMO had demonstrated irreparable injury.
 
 B
 
 14
 Nor are we convinced that IAPMO has demonstrated a likelihood of success on the merits of its claims of copyright infringement and contract breach.
 
 
 15
 First, the district court enjoined ICBO from infringing IAPMO's copyrights. However, it made no factual finding that ICBO had actually infringed any copyright. In addition, the court did not explain how ICBO could have infringed the copyright in the Uniform Mechanical Code, a copyright in which ICBO owns an undivided one-half interest. In light of these omissions, the court erred to the extent that it granted the injunction based on IAPMO's copyright claim.
 
 
 16
 We also conclude that the district court erred in finding, at this early stage in the proceedings, that IAPMO has a probability of success on the merits of its contract claims. To the contrary, we find that ICBO's interpretation of the contracts is at least equally as plausible as IAPMO's interpretation. Explanation requires a brief review of the various agreements.
 
 
 17
 The first relevant agreement is the January 1991 contract governing the Uniform Mechanical Code ("1991 UMC Agreement"). This agreement was the latest in a series of agreements between the parties which defined their rights and obligations with respect to the UMC. As in prior versions, the 1991 agreement contained no geographic limitation and governed "all rights and obligations of the parties with respect to any edition of the UMC, and any amendments thereto." The agreement also specified that either party could terminate the agreement after three years, and that upon termination, and "in the absence of a signed agreement between the two parties," either party was free to publish new editions of the UMC.
 
 
 18
 The 1991 UMC Agreement was terminated by IAPMO on January 1, 1994, in accordance with the terms of the contract. The present dispute turns in large measure on whether any of the 1992 agreements is a "signed agreement between the two parties" which would preclude ICBO from publishing a new edition of the UMC.
 
 
 19
 The second relevant agreement is the "1991 UPC Agreement" governing the parties' rights and obligations with respect to the Uniform Plumbing Code. The copyright to the UPC is owned solely by IAPMO. However, from 1982 through 1994 IAPMO and ICBO jointly distributed the UPC. As they did with the UMC, the parties entered into a series of written agreements setting forth their rights and obligations with respect to ownership and exploitation of the UPC, the most recent of which was the 1991 UPC Agreement.
 
 
 20
 This agreement contained a provision which granted to ICBO the right to create and distribute its own new model plumbing code upon expiration of the agreement. ICBO claims that the model plumbing code it has since published is one authorized in part by this provision; IAPMO counters that ICBO's model plumbing code infringes its copyright in the UPC.
 
 
 21
 Finally, while the 1991 UMC and UPC Agreements were still in effect, ICBO, IAPMO and the California State Buildings Standards Commission ("BSC") entered into a set of four contracts (the "1992 License Agreements"). IAPMO claims that the contracts were designed to replace the 1991 UMC and UPC Agreements, and were to henceforth govern all rights of the parties in the UPC and UMC. IAPMO bases its claim of contract breach on this premise. ICBO persuasively responds, however, that the 1992 agreements related solely to the 1991 revisions to the California state versions of the UPC and UMC, and that the 1992 agreements had no effect on the 1991 UPC and UMC Agreements.
 
 
 22
 The district court apparently agreed with IAPMO; the court's order stated that ICBO breached the "1992 License Agreements." Unfortunately, the court did not clarify which of the four agreements it believed ICBO had breached. However, it appears that the court's finding was probably based on paragraph 6 of the 1992 ICBO/IAPMO Agreement. That provision provides as follows:
 
 
 23
 Prior Approval of IAPMO. ICBO hereby affirmatively covenants to IAPMO that ICBO shall, at all times during the term hereof and during the term of the ICBO/BSC Agreement, with respect to each and every amendment, modification, supplement, version or cover of the UPC ... or UMC prepared by ICBO or BSC [the California Building Commission] (or both of them) pursuant to Articles I, IV and V, of the ICBO/BSC Agreement, obtain the written approval of IAPMO....
 
 
 24
 (Emphasis added).
 
 
 25
 ICBO points out that this provision states that ICBO must obtain IAPMO's prior approval only for amendments, modifications or versions of the UPC or UMC being prepared pursuant to the ICBO/BSC Agreement; it also asserts that that agreement concerned only the 1991 California Mechanical Code, rather than the UMC generally. As such, ICBO argues that by publishing the 1994 version of the UMC it cannot have violated paragraph 6, because the 1994 UMC was not prepared "pursuant to Articles I, IV and V of the ICBO/BSC Agreement...." It therefore argues that it was not required to obtain IAPMO's written approval prior to publishing the code.
 
 
 26
 After reviewing the contracts and the record, we believe that ICBO's argument is sufficiently strong to preclude a finding, at least at this early stage of the case, that IAPMO has a probability of success on the merits of its claim that ICBO violated paragraph 6 of the 1992 ICBO/IAPMO Agreement.[4]
 
 
 27
 There appears to be only one other provision of the 1992 Agreements which the district court might have been relying on in concluding that ICBO committed a breach of contract. That provision is paragraph 4 of the 1992 IAPMO/ICBO License Agreement, which states that:
 
 
 28
 4. Term.
 
 
 29
 (a) The License shall commence on the date hereof and shall continue until terminated pursuant to any provision hereof, any provision of the IAPMO/ICBO Agreement and/or any provision of the IAPMO/ICBO License, at which time the Codes and Code Supplements must be completed and published by Licensee [ICBO]. Thereafter, [ICBO] shall have no right to prepare any derivative work based upon the Licensed Properties.
 
 
 30
 (b) Unless upon the termination of this Agrement, [ICBO] and [IAPMO] enter into a subsequent license agreement regarding the Licensed Properties, [ICBO] shall forthwith discontinue all use of the Licensed Properties or any improvements thereto, and shall irrevocably release and disclaim any right or interest in or to the Licensed Properties. Notwithstanding the foregoing, upon the termination of this Agreement, [ICBO] shall have the right to publish, distribute, amend and supplement the final versions of the Codes and Code Supplements.
 
 
 31
 (Emphasis added). This contract defines the "Licensed Properties" as "[t]he 1991 editions of the UPC ... and UMC." In addition, it defines "the Codes" as the "new California Mechanical Code and [the] new California Plumbing Code...." As was the case with paragraph 6, the primary issue concerning this provision is whether the contract in which it appears was intended to refer to the UMC and UPC generally, or merely to the 1991 California editions of those codes.
 
 
 32
 In our view, at this early stage in the proceedings neither side clearly has the better of the argument; the contract language is clearly susceptible of more than one reading. However, ICBO raises a number of points which lead us to conclude that its interpretation is entirely plausible.[5] For that reason, we believe that the district court erred in concluding that IAPMO has a high probability of success on the merits on its contract claim.
 
 III
 
 33
 In sum, we are not persuaded that IAPMO has proven irreparable injury and a likelihood of success on the merits. Accordingly, we REVERSE the June 28, 1995 order granting preliminary injunctive relief, and REMAND the case for further proceedings consistent with this disposition.
 
 
 34
 REVERSED and REMANDED. Judge Burns dissents without opinion.
 
 
 
 *
 The Honorable James M. Burns, Senior United States District Judge for the District of Oregon, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 In determining whether the district court based its decision on an erroneous legal standard, this court applies de novo review. Westlands Water Dist. v. Natural Resources Defense Council, 43 F.3d 457, 459 (9th Cir.1994). This court also reviews the district court's interpretation of a contract, and the court's conclusion that the facts of the case establish a contract violation, de novo. United States v. Plummer, 941 F.2d 799, 803 (9th Cir.1991)
 
 
 [2]
 Although IAPMO submitted one declaration which briefly discussed the issue, the declaration was filed in opposition to ICBO's ex parte application for a stay of the injunction, and was thus filed after the district court had already issued the order granting the injunction
 
 
 [3]
 Our conclusion on this point is buttressed by the fact that a party's contractual concession that a certain injury would be "irreparable" may well be erroneous. As noted above, the district court may not issue injunctive relief unless the moving party demonstrates some irreparable injury; in determining whether the moving party has met this burden, the court must independently determine whether any injury which has been demonstrated is in fact irreparable. While the court may rely on the contractual provision as evidence of irreparable injury, it may not abrogate its obligation to make this finding solely by pointing to the fact that one of the parties to a contract has conceded that such an injury would be irreparable
 
 
 [4]
 Our decision is prompted by a number of factors, including, for example, the fact that Recital A of the 1992 ICBO/IAPMO Agreement states that the purpose of the agreement is to develop and publish a "new California State Building Code...." (Emphasis added). In our view, this supports ICBO's argument that it could not have breached paragraph 6 by publishing a code which had nothing to do with California
 
 
 [5]
 For example, ICBO points out that paragraph 18 of the 1991 UMC Agreement specifically refers to a future, separate agreement with the California Building Standards Commission ("BSC"), and states that that agreement will concern "the preparation and publication of the California Supplement as to the 1991 edition of the UMC." (Emphasis added). ICBO argues persuasively that "the parties [thus] expressly recognized that a future agreement would govern the 1991 California Mechanical Code, while the 1991 UMC Agreement would remain in effect and govern the UMC itself."
 In addition, Recitals C and E of the ICBO/IAPMO Agreement specifically refer to the still-existing 1991 UPC and UMC Agreements, thus suggesting that the 1992 agreements were not intended to supplant those agreements. Moreover, there is nothing in the 1992 agreements which specifically abrogates the 1991 Agreements. ICBO also persuasively points to a separate and more recent contract by which ICBO and IAPMO jointly granted a license to the National Institute of Building Sciences to create a CD-ROM version of the UPC and UMC. ICBO argues that the agreement shows that the parties continued to recognize, even after the signing of the 1992 agreements, both ICBO's 50% ownership interest in the UMC copyright and the continued existence and viability of the 1991 UMC and UPC Agreements.
 Finally, ICBO also points out that following the signing of the 1992 Agreements, IAPMO continued to perform its obligations under the 1991 UMC and UPC Agreements. In particular, IAPMO participated in the annual revisions to the UMC through the joint committee established in the UMC Agreement, and in late 1993 IAPMO gave the requisite six-months advance notice of termination of the UMC Agreement, thus indicating that it thought the agreement was still active.
 We cite these arguments merely to note that ICBO's arguments are sufficiently strong to preclude a determination that IAPMO has a probability of success on the merits.