**Opal BEHN, Plaintiff,**

v.

**Jo Anne B. BARNHART, Commissioner of the Social Security Administration, Defendant.**

**No. CV 05–5784–RC.**

United States District Court,
C.D. California.

Oct. 18, 2006.

Lawrence D. Rohlfing, Lawrence D. Rohlfing Law Offices, Santa Fe Springs, CA, for Plaintiff.

Sharla Cerra, AUSA–Office of US Attorney, Los Angeles, CA, for Defendant.

## OPINION AND ORDER

CHAPMAN, United States Magistrate Judge.

Plaintiff Opal Behn filed a complaint on August 10, 2005, seeking review of the Commissioner's decision denying her application for disability benefits. The Commissioner answered the complaint on January 3, 2006, and the parties filed a joint stipulation on May 23, 2006.

## BACKGROUND

### I

On December 20, 2002, plaintiff applied for disability benefits under the Supplemental Security Income program of Title XVI of the Social Security Act ("the Act"), 42 U.S.C. § 1382(a), claiming an inability to work since January 1994, due to schizophrenia, a bipolar disorder, insomnia, and back pain. Certified Administrative Record ("A.R.") 17, 72. The plaintiff's application was denied on April 22, 2003. A.R. 30–34. The plaintiff then requested an administrative hearing, which was held before Administrative Law Judge Cynthia A. Minter ("the ALJ") on October 5, 2004. A.R. 35–36, 227–51. On December 17, 2004, the ALJ issued a decision finding plaintiff is not disabled. A.R. 14–23. The plaintiff appealed this decision to the Appeals Council, which denied review on April 15, 2005. A.R. 9–13.

### II

The plaintiff, who was born on December 7, 1953, is currently 52 years old. A.R. 72, 229. She has a high school edu-

cation and has previously worked as an administrative secretary and a part-time baby-sitter. A.R. 88, 93, 100, 230–31.

The plaintiff states she developed psychiatric problems after being hit in the head by a man and knocked unconscious.[1] A.R. 201, 231–32, 237–38. On March 27, 2002, Lynn Burroughs, a licensed clinical social worker, evaluated plaintiff at the Los Angeles County Department of Mental Health ("DMH"), diagnosed plaintiff with an unspecified depressive disorder and determined plaintiff's Global Assessment of Functioning ("GAF") to be 45.[2] A.R. 131–35. On April 19, 2002, a DMH psychiatrist examined plaintiff and diagnosed her with an unspecified depressive disorder, without psychotic features, and prescribed psychiatric medication for her. A.R. 136–37. Plaintiff, however, received no further treatment. A.R. 135.

On May 14, 2004, Mark D. Pierce, Ph.D., a licensed clinical psychologist, examined plaintiff, conducted psychological testing, and diagnosed plaintiff with an unspecified affective disorder (depressive and anxious symptoms with potential for psychotic regression against suspiciously displayed symptoms seen). A.R. 201–09. Dr. Pierce remarked:

> The [plaintiff's] presentation is notable for her dramatic and suspicious entry into this examiner's office, engaged in a seeming conversation with "Mr. Owl," articulating "who, who!" over this examiner's attempts to make introductions. At this point, this suspicious symptom is gently confronted by the examiner, refocusing on the purpose of today's examination and that she must attempt to comport herself appropriately to the

context, at which point her hallucinatory demonstration ceases, not to be seen again.

A.R. 201. Dr. Pierce opined plaintiff's "presentation today does appear to be psychiatrically depressed and withdrawn with psychotic features possible, though this seems to be an overly dramatized psychotic presentation, thought to be given mostly for this examiner's benefit." A.R. 203–04. Dr. Pierce further opined plaintiff "appears to put forth a challenged effort with testing, including the significant failure of the malingering memory test × 2. . . . The [plaintiff's] general attitude was characterized by motivationally compromised effort, interest, and compliance." A.R. 203–05. Dr. Pierce concluded:

> [Plaintiff] does not convincingly demonstrate that she would be disabled from completing simple and repetitive-to-medium-demand vocational skills and of adapting to minimal changes in a work environment. Reasoning capacities are thought to be generally capable to this level of functioning. [¶] The [plaintiff] may show challenges working effectively with others by her under-motivated presentation today and an estimated degree of true psychiatric disorder. She can remember and comply with simple one- and two-part instructions. She further does not demonstrate convincingly that she would be disabled from concentrating adequately for a full workweek.

A.R. 206. Finally, Dr. Pierce opined plaintiff has a "slight" limitation in her ability to understand, remember, and carry out detailed instructions, interact appropriately with the public, supervisors, and co-

---

**1.** Although plaintiff complains of both physical and mental problems, she only challenges the ALJ's assessment of her mental complaints.

**2.** A person with a GAF of 45 exhibits "[s]erious symptoms (e.g., suicidal ideation, severe

obsessional rituals, frequent shoplifting) or serious impairment in social, occupational, or school functioning (e.g. no friends, unable to keep a job)." American Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders,* 34 (4th ed. (Text Revision) 2000).

workers, and respond appropriately to changes in a routine work setting, but otherwise is not limited. A.R. 208–09.

On April 16, 2003, King M. Mendelsohn, M.D., a nonexamining psychiatrist, opined plaintiff has an unspecified depressive disorder, which has caused "mild" restriction in plaintiff's activities of daily living, "mild" difficulties in maintaining social functioning, "moderate" difficulties in maintaining concentration, persistence, or pace, and "one or two" episodes of decompensation. A.R. 162–75. Dr. Mendelsohn opined plaintiff is "moderately" limited in her ability to understand, remember, and carry out detailed instructions, but is otherwise not significantly limited. A.R. 157–59. Indeed, Dr. Mendelsohn opined plaintiff "retains the ability understand, remember and carry out simple work-related tasks and she has no significant functional limitations in her ability to sustain concentration/persistence/pace, in her ability to relate to others, or in her ability to adapt to the requirements of the usual workplace." A.R. 159, 174.

Medical expert Stephen H. Wells, Ph.D., a licensed clinical psychologist, testified at the administrative hearing that plaintiff has an unspecified depressive disorder, with possible borderline intellectual functioning and possible alcohol abuse, and that none of these conditions meet or equal a listed impairment. A.R. 240–45. Dr. Wells opined plaintiff should be "appropriately limited to simple repetitive tasks up to medium demands with minimal changes in the work environment." A.R. 241. Further, Dr. Wells opined:

> I believe there are serious problems with credibility and with the [plaintiff's] presentation. I do not believe there are true auditory hallucinations. I believe that the indications from the Ray test of malingering are important with regard to the obtaining of a full scale [IQ] of 59. I would have to agree with Dr. Pierce that that is an underestimation and I have to agree with his comments about inconsistency but on the other hand, there does appear to be a depressive disorder that is imposing limitations, and ... I would accept those limitations indicated by Dr. Mendelson including ... a moderate impairment with regard to persistence and pace.

A.R. 241–42. Finally, Dr. Wells opined plaintiff has "mild" restriction in her activities of daily living, "mild" difficulties in maintaining social functioning, "moderate" difficulties in maintaining concentration, persistence, or pace, and no episodes of decompensation. A.R. 210–26.

## DISCUSSION

### III

This Court, pursuant to 42 U.S.C. § 405(g), may review the Commissioner's decision denying plaintiff disability benefits to determine if her findings are supported by substantial evidence and whether the Commissioner used the proper legal standards in reaching her decision. *Widmark v. Barnhart,* 454 F.3d 1063, 1066 (9th Cir.2006); *Stout v. Commissioner, Soc. Sec. Admin.,* 454 F.3d 1050, 1052 (9th Cir.2006).

The claimant is "disabled" for the purpose of receiving benefits under the Act if she is unable to engage in any substantial gainful activity due to an impairment which has lasted, or is expected to last, for a continuous period of at least twelve months. 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. § 416.905(a). "The claimant bears the burden of establishing a prima facie case of disability." *Roberts v. Shalala,* 66 F.3d 179, 182 (9th Cir.1995), *cert. denied,* 517 U.S. 1122, 116 S.Ct. 1356, 134 L.Ed.2d 524 (1996); *Smolen v. Chater,* 80 F.3d 1273, 1289 (9th Cir.1996).

The Commissioner has promulgated regulations establishing a five-step sequential evaluation process for the ALJ to follow in a disability case. 20 C.F.R. § 416.920. In the **First Step**, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. § 416.920(b). If not, in the **Second Step**, the ALJ must determine whether the claimant has a severe impairment or combination of impairments significantly limiting her from performing basic work activities. 20 C.F.R. § 416.920(c). If so, in the **Third Step**, the ALJ must determine whether the claimant has an impairment or combination of impairments that meets or equals the requirements of the Listing of Impairments ("Listing"), 20 C.F.R. § 404, Subpart P, App. 1. 20 C.F.R. § 416.920(d). If not, in the **Fourth Step**, the ALJ must determine whether the claimant has sufficient residual functional capacity despite the impairment or various limitations to perform her past work. 20 C.F.R. § 416.920(f). If not, in **Step Five**, the burden shifts to the Commissioner to show the claimant can perform other work that exists in significant numbers in the national economy. 20 C.F.R. § 416.920(g).

Where there is evidence of a mental impairment that may prevent a claimant from working, the Commissioner has supplemented the five-step sequential evaluation process with additional regulations addressing mental impairments. *Maier v. Comm'r of the Soc. Sec. Admin.*, 154 F.3d 913, 914 (9th Cir.1998) (per curiam). First, the ALJ must determine the presence or absence of certain medical findings relevant to the ability to work. 20 C.F.R. § 416.920a(b)(1). Second, when the claimant establishes these medical findings, the ALJ must rate the degree of functional loss resulting from the impairment by considering four areas of function: (a) activities of daily living; (b) social functioning; (c) concentration, persistence, or pace; and (d) episodes of decompensation. 20 C.F.R. § 416.920a(c)(2–4). Third, after rating the degree of loss, the ALJ must determine whether the claimant has a severe mental impairment. 20 C.F.R. § 416.920a(d). Fourth, when a mental impairment is found to be severe, the ALJ must determine if it meets or equals a Listing. 20 C.F.R. § 416.920a(d)(2). Finally, if a Listing is not met, the ALJ must then perform a residual functional capacity assessment, and the ALJ's decision "must incorporate the pertinent findings and conclusions" regarding plaintiff's mental impairment, including "a specific finding as to the degree of limitation in each of the functional areas described in described in [§ 416.920a(c)(3) ]." 20 C.F.R. § 416.920a(d)(3), (e)(2).

Applying the five-step sequential evaluation process, the ALJ found plaintiff has not engaged in substantial gainful activity since the alleged onset of disability. (Step One). The ALJ then found plaintiff has "severe" impairments, including a depressive disorder (Step Two); however, she does not have an impairment or combination of impairments that meets or equals a Listing. (Step Three). The ALJ next determined plaintiff is unable to perform her past relevant work as an administrative secretary. (Step Four). Finally, the ALJ determined plaintiff has the residual functional capacity to perform a significant number of jobs in the national economy, including work as an assembler, inspector, or packer; therefore, she is not disabled. (Step Five).

## IV

A claimant's residual functional capacity ("RFC") is what she can still do despite her physical, mental, nonexertional, and other limitations. *Mayes v. Massanari*, 276 F.3d 453, 460 (9th Cir.2001); *Cooper v. Sullivan*, 880 F.2d 1152, 1155 n. 5 (9th

Cir.1989). Here, the ALJ found plaintiff has the RFC to:

> lift 50 pounds occasionally and 25 pounds frequently; ... to stand and/or walk six hours in an eight-hour workday; ... to sit six hours in an eight-hour workday; limited to occasional climbing, balancing, stooping, kneeling, crouching, and crawling; unable to work in extremely cold environments; ... to perform only simple, repetitive tasks; [is] unable to work in environments with more than minimal changes in the physical setting or work activities; and [is] unable to work in conjunction with other people in accomplishing work tasks ·but able to work in the same room with other people.

A.R. 22. However, the plaintiff contends the ALJ's findings are not supported by substantial evidence because the ALJ did not properly assess her mental impairment.

Although Social Security regulations no longer require that the ALJ complete a Psychiatric Review Technique Form and append it to the written decision, 20 C.F.R. § 416.920a(e)(2),[3] when there is a colorable claim of a mental impairment, the ALJ must rate as being either none, mild, moderate, marked, or extreme the claimant's functional limitations in the areas of daily activities, social functioning, and concentration, persistence or pace and also rate as either none, one or two, three or four or more the claimant's episodes of decompensation, and such ratings **must** be included in the ALJ's written decision. 20 C.F.R. § 416.920a(c)(3–4), (e)(2).

 Here, the ALJ found plaintiff has a severe mental impairment, a depressive disorder. A claim is "colorable" if it is not "wholly insubstantial, immaterial, or frivolous." *Rolen v. Barnhart,* 273 F.3d 1189, 1191 (9th Cir.2001) (citations omitted), *cert. denied,* 537 U.S. 818, 123 S.Ct. 93, 154 L.Ed.2d 24 (2002); *Cassim v. Bowen,* 824 F.2d 791, 795 (9th Cir.1987). Since plaintiff's mental impairment is severe, plaintiff a fortiori raises a "colorable" claim of mental impairment. *Gutierrez,* 199 F.3d at 1050–51; *Moore v. Barnhart,* 405 F.3d 1208, 1214 (11th Cir.2005) (per curiam). Despite this, the ALJ did not comply with the Commissioner's regulations, 20 C.F.R. § 416.920a(c)(3–4), (e)(2), and did not rate plaintiff's functional limitations in the areas of daily activities, social function, concentration, persistence or pace, and episodes of decompensation, as she is required to do. *See* A.R. 17–23. Thus, the ALJ failed to use the proper legal standard in making the Step Five determination.

However, the Commissioner contends the ALJ's error was harmless. *See Burch v. Barnhart,* 400 F.3d 676, 679 (9th Cir. 2005) ("A decision of the ALJ will not· be reversed for errors that are harmless."). First, the Commissioner argues it was harmless because the ALJ relied on the opinion of Dr. Pierce, who **reviewed** Dr. Mendelsohn's ratings in the four functional areas. Jt. Stip. at 8:2–10, 9:14–25. However, the Commissioner cites no authority to support· her claim that an expert's reliance on a physician's ratings of the four functional areas obviates the regulatory requirement that the ALJ make specific ratings.

Second, the Commissioner contends the ALJ's error was harmless because the ratings for the four functional areas are used

---

**3.** Prior to September 20, 2000, "Social Security regulations require[d] an [ALJ] to fill out and attach to each decision, 'in any case where there [was] evidence which indicate[d] the existence of a mental impairment,' a psychiatric review technique form (PRTF) evaluating the severity of mental impairments." *Gutierrez v. Apfel,* 199 F.3d 1048, 1049 (9th Cir.2000) (citation omitted).

only to assess whether a claimant has a severe mental impairment (Step Two) and, if so, whether such impairment meets or equals a listed impairment (Step Three). Jt. Stip. at 8:11–18; *see* SSR 96–8p, 1996 WL 374184, *4 (S.S.A.) (The four designated functional limitations areas "are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process."). Yet, the federal courts have consistently refused to find harmless an ALJ's failure to rate the four functional areas even when the ALJ has proceeded beyond Step Three in the sequential analysis. *See, e.g., Gutierrez,* 199 F.3d at 1050–51 (rejecting argument ALJ's failure to assess mental impairment was "a mere technicality, since the ALJ inquired into the subjects covered by the PRTF at the hearing and considered the opinions of [plaintiff's] treating physicians and therapists" and concluded plaintiff could return to her past relevant work); *Moore,* 405 F.3d at 1214 ("The ALJ failed to even analyze or document [plaintiff's] condition in two of the . . . functional areas: social functioning and prior episodes of decompensation. Because the ALJ's decision lacks consideration of these factors and their impact on his ultimate conclusion as to [plaintiff's] RFC, we cannot even evaluate the Commissioner's contention that the ALJ's error was harmless.").

Moreover, both Drs. Mendelson and Wells opined plaintiff has a "moderate" limitation in maintaining concentration, persistence, or pace, A.R. 172, 220, 242, and vocational expert Susan Green testified that an individual who has a "moderate" limitation in concentration, persistence, or pace "probably" would not be able to perform work as an assembler, inspector, or packer—the jobs the ALJ determined in Step Five that plaintiff could perform in the national economy. A.R. 22–23, 248. Under these circumstances, the ALJ's failure to properly rate the four functional areas cannot be considered harmless error.

## V

 When the Commissioner fails to use the proper legal standards, the Court has the authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g); *McCartey v. Massanari,* 298 F.3d 1072, 1076 (9th Cir.2002). Generally, " 'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.' " *Benecke v. Barnhart,* 379 F.3d 587, 595 (9th Cir.2004) (citations omitted); *Moisa v. Barnhart,* 367 F.3d 882, 886 (9th Cir.2004). Here, the ALJ's legal error can be corrected with further proceedings; therefore, remand is the appropriate remedy.[4] *Gutierrez,* 199 F.3d at 1051; *Moore,* 405 F.3d at 1214.

## ORDER

IT IS ORDERED that: (1) plaintiff's request for relief is granted; and (2) the Commissioner's decision is reversed, and the action is remanded to the Social Security Administration for further proceedings consistent with this Opinion and Order, pursuant to sentence four of 42 U.S.C. § 405(g), and Judgment shall be entered accordingly.

---

4. Having concluded this matter must be remanded to the Commissioner for further proceedings, it is not necessary to address the other issue raised in the joint stipulation, as it would not require greater relief than granted herein.